Plaintiffs are attempting to recover the cost of making to their duplex apartment building the repairs which, it is alleged, were made necessary by damage which they say was caused by negligence of defendant corporation in driving of piles for the erection of a building for "the telephone company." *Page 223 
When the suit was filed the plaintiffs were Mr. and Mrs. Charles A. Loesch and Miss Mary E. Chilton who owned the apartment building, but before judgment was rendered in the District Court, Mr. Loesch died and his widow, already a plaintiff, was sent into possession of his estate including his interest in the said building and in this suit.
The Telephone Company — we are not given the full name — desiring to erect on its property at St. Charles Avenue and General Pershing Street in New Orleans, a telephone exchange building, and having obtained the necessary municipal permits, entered into a contract with defendant, R.P. Farnsworth 
Company, Incorporated, under which the said contracting company undertook to drive the piles which were required by the plans and specifications of the architects of the Telephone Company.
After the piles had been driven, plaintiffs filed this suit against the contracting company alone, alleging that in driving the said piles the said contracting company "did not exercise reasonable care in that, * * * it used excessively heavy equipment and drove the piling to excessive depths causing violent vibration and damage to buildings in the vicinity, and more particularly to the property of petitioners, * * *".
The defendant corporation maintained that no damage had been caused by the driving of the piles and especially denied that it had been in any way negligent in doing the said work, contending that it had driven the piles in a careful and prudent manner, and in accordance with the requirements of the architects of the Telephone Company, and that therefore it could not be held liable for any damage sustained by plaintiffs' building even if it should appear that such damage had, in fact, resulted from the carrying out of the said work.
When, during the trial below, it appeared from the evidence that there had been no negligence in the driving of the piles and that that work had been done in a careful, prudent manner, and in accordance with the requirements of the architects, counsel for plaintiffs found it necessary to shift his position, and abandoning the contention that the damage had resulted from negligence on the part of the contracting company, he conceived the ingenious theory that the Telephone Company in so using its property as to cause damage to that of plaintiffs had been guilty of an unlawful act, and that since the contracting company had assisted in the doing of this unlawful act, it could be held liable for the resulting damage.
There was judgment for plaintiffs for $420 and defendant has appealed.
The theory of counsel for plaintiffs is that if an owner of real estate — a proprietor, as he is termed in our Code — in making use of his property, causes damage to that of a neighbor, he is guilty of committing an unlawful act, and that anyone who assists him is liable because of the provisions of Article 2324 of our Civil Code which read as follows: "Accessory to commission of damage — Liability. — He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
The theory that the erection of the building was an unlawful act since it caused damage to the property of plaintiffs is based upon counsel's interpretation of Article 667 of our Civil Code, which reads as follows: "Sic utere tuo ut alienum non laedas. — Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
Thus counsel's contention is that, however legal may be the work which an owner is constructing on his property, and however great may be the care exercised in constructing it, nevertheless, if, as a result, damage is sustained by the property of a neighbor, the owner who is having the work done is, because of Article 667, guilty of the commission of an unlawful act and the contractor who has "assisted" him, is, because of Article 2324, liable for the damage caused.
The proof that the damage sustained by plaintiffs' building was caused by the driving of the piles is not so perfect as to make it certain that in the absence of a finding by the District Court we would have reached the conclusion that it was so caused; still, in view of that finding on what is purely a question of fact, we will assume that such damage as was shown was caused by the driving of the piles.
It is conceded that the work was carried out by the contracting company properly and without any negligence, and in accordance *Page 224 
with the plans furnished by the Telephone Company.
It is established that when the work was commenced there was no certainty whatever that any such damage must necessarily result. In fact, the record shows that often such work is done without any such damage to nearby buildings and that, in fact, no other buildings, and there were others even nearer to the work than plaintiffs' apartment building, sustained any damage.
There was then no reason for anticipation that damage would result to neighboring properties.
Plaintiffs have conceded that the work could not have been prevented by legal process.
In view of these facts, we are unable to understand how it can be said that the erection of the building constituted an unlawful act merely because, in this particular case, damage was sustained by another building in the neighborhood.
If it had been made to appear that such work cannot be done without the certainty of damage to nearby structures, the legal situation might be different though we do not find it necessary to so decide. Where, in the interests of progress and modern development, a new building is to be erected which, after completion, will cause no damage to neighboring properties but in the construction of which temporary damage may be caused, it may be that Article 667 will be interpreted not as preventing the construction of the building but merely as making the owner liable for such damage. But that question is not involved here.
When, as here, it is shown that ordinarily no damage is caused, it becomes improper to characterize the work as unlawful merely because, by misfortune, damage, though unforeseen and therefore obviously not to be expected, did, as a matter of fact, result.
That Article 667 should not be interpreted as giving the right to prevent such work merely because of the remote possibility that damage may result, was held by our Supreme Court in Higgins Oil Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206, 5 A.L.R. 411. "* * * very evidently an owner cannot be debarred from the legitimate use of his property simply because it may cause a real damage to his neighbor. It would be contrary to the fundamental legal principle according to which the exercise of a right cannot constitute a fault or wrong, * * *." And, furthermore, counsel for plaintiffs has, as we have already said, conceded that the work could not have been prevented in advance by legal process.
If an owner cannot be prevented from lawfully using his property merely because the use "may" cause damage, then obviously in so using it he is not committing an unlawful act, and a contractor who does the work for him cannot be said to be assisting in the doing of an unlawful act.
There is some suggestion that Article 667 is a prohibitory law and that its effect is to prevent the construction of such a building, and that therefore if such a building is constructed, the construction itself constitutes an unlawful act. But in making this suggestion counsel borders upon inconsistency for he has freely admitted that the work could not have been prevented in advance, and in making this admission has, we think, given to the article its proper meaning, i.e., that such work may not be prevented but that however legal it may be, if damage results, recovery may be had under this article.
The truth is that there is no sound basis for the theory that Article 2324 has any application whatever in connection with Article 667. The former, 2324, is included among the tort articles of our Code, and simply means that he who aids another in the commission of a tort is a joint tort feasor, and is liable also for the damage thereby caused. This was shown in an opinion written by Chief Justice O'Niell in Cust v. Item Co., Limited,200 La. 515, 8 So.2d 361, 363, in which the plaintiff sought to hold liable the defendant on the theory that the defendant had induced a third party to breach a contract between the said third party and the plaintiff. Article 2324 was relied on there as it is here. The Court said: "The plaintiff cites and relies upon article 2324 of the Civil Code, which declares that he who causes another to do an unlawful act — meaning a tort — or who assists or encourages him in the commission of it — is answerable in solido with him for the damages caused thereby. That means merely that one who causes another to commit a tort, or who assists or encourages him in the commission of the tort, is himself a tort feasor and is therefore liable in solido with the one who actually commits the tort. * * *" If this is true, Article 2324 has no application where there has been no tort. *Page 225 
And we do not see that here, under any theory of the case, there is involved any tort since it is conceded that there was no negligence on the part of the defendant, and that there was nothing defective about the plans and specifications, and since the claim, as it is now presented, is based merely on the theory that there is liability solely because something, which it is perfectly legal for the owner to do has been properly done, and damage has, nevertheless, resulted.
We are impressed with the idea that the obligations created by those articles of our Code under the title "Predial Servitudes" created among the proprietors of neighboring estates something in the nature of a quasi contract. Counsel for plaintiffs himself recognizes this, for, while he also suggests the possibility that liability of the Telephone Company, had it been sued, might have been said to arise "ex delicto", he opens his statement on this phase of the case by saying that had the Telephone Company been sued "* * * it might have been said that the Telephone Company's liability arose Ex Contractu — for the breach of its obligation to its neighbor to make no use of its property which might `deprive his neighbor of the liberty of enjoying his own.' * * *".
This idea that there is a contractual relationship in such situations is approved by the eminent commentator, Potier, whose statement is cited, apparently with approval, by our Supreme Court in Higgins Oil Fuel Co. v. Guaranty Oil Co., supra, "`Neighborhood is a quasi contract which creates reciprocal obligations between the neighbors; that is to say, between the owners or possessors of contiguous estates.'"
If then the obligation created by Article 667 arises ex contractu, Article 2324 has no application whatsoever for, as we have already shown in Cust v. Item Co., Limited, supra, our Supreme Court said that this latter article, 2324, applies only to the one who assists another in committing a tort, and does not apply to one who assists or encourages another in breaking a contract.
There are, it must be recognized, many situations in which liability may result without fault, and counsel for plaintiffs maintains that where there is such liability it is based on tort even though no actual fault is shown, and he asserts that the violation of Article 667 constitutes such a tort. And he maintains that merely because this article is not found among the other tort articles in the Code, this does not justify the view that the damage referred to does not result from tort. And he points out that in our Code there is at least one tort article not found along with Article 2315, in the chapter which treats "Of Offenses And Quasi Offenses". He cites the decision of our Supreme Court in Lowe v. Home Owners' Loan Corp., 199 La. 672,6 So.2d 726, 729, in which the Court said: "There are a number of articles appearing in different portions of the Code which demonstrate that all of our law governing torts is not confined to Article 2315 and the succeeding articles ending with Article 2324. Thus, Article 670 which has often been considered by our Courts in connection with Articles 2322 and 2716, is found under Title IV, treating `Of Predial Servitudes.' * * *"
But the article to which the Court points (670), though found in that part of the Code treating "Of Predial Servitudes", nevertheless bases liability on "neglect" and, therefore, on fault. Hence, by its express terms this article is a "fault" article. We may add, as is already pointed out, that there are other situations from which liability results without fault. See "Liability Without Fault" by Rufus C. Harris, 6 Tulane Law Review 337 and "Tort Doctrine in Louisiana" by Professor Stone, 17 Tulane Law Review 159. In this latter article Professor Stone points out many situations from which liability without fault may result, such as: "* * * man's responsibility as a parent, as a master or employer, as a lessor, as a lessee, as a tutor, as a carrier or waterman, as a contractor, as an innkeeper, as an adjoining landowner, as a mandatary, as a notary, as a teacher, as a lender, and as a negotiorum gestor."
We recognize the fact that both Dr. Harris and Professor Stone seem to feel that in many of those cases, such as we have mentioned, in which liability results without fault, the liability nevertheless results from tort.
But even if it can be said that such liability is tort liability, it is obvious that when the lawful work of a proprietor causes damage to the property of a neighbor, even if it can be said to arise from tort, it cannot be said to be the result of fault. And we have no doubt that when in Cust v. Item Co., Limited, supra, it was said that Article 2324 applies only where there is a tort involved, the court meant that it applies only where there is involved a tort *Page 226 
which is based on fault, since the article uses the word "unlawful" and makes the liability of the "accessory" depend upon the fact that there has been an unlawful act done. Here, even if the act of the Telephone Company can technically be characterized as a tort, we cannot conclude that it can be classified as unlawful.
We are much impressed by a realization of the obviously unfair result which might be brought about should it be held that, under such facts as are shown here, a contractor might be held liable for damage sustained by nearby buildings. The contractor here had nothing whatever to do with the preparation of the plans and specifications. He carried out those plans and specifications without variation on his part (as is conceded). Therefore, if there is anything at all which justifies recovery from anyone, it is only the fact that because of the proximity of plaintiffs' building during the construction of the building for the Telephone Company, damage resulted to the former, not from the manner in which the work was done but merely from the fact that the work was done at all. Why then should the contractor be held liable?
It often happens that public authorities give permission for the construction by railroad or other public service corporations of embankments or other structures which cause damage to or depreciate the value of adjoining properties. The construction of highways, too, often causes such damage. If so, the fact that a permit or a franchise has been granted does not relieve the railroad or other corporation or board from liability to the private owner for such damage. Lewis v. Colorado Southern, N.O. 
P.R. Co., 122 La. 572, 47 So. 906; Harrison v. Louisiana Highway Commission, 11 So.2d 612, decided by the Supreme Court on the 4th day of November, 1942, not yet reported [in State report].
Nevertheless, the granting of the permit or franchise authorizes the construction of the work, and it would be unfair to hold liable the contractor employed to do the work merely because in doing it legally and properly he has caused damage to adjoining property.
Egan v. Hotel Grunewald Co., 129 La. 163, 55 So. 750, 752, is cited as supporting the theory of plaintiff that a contractor may be held liable when, from the work which he is doing for the owner, damage is sustained by an adjacent building. And it is true that there the contractor was held liable as a joint tort feasor. But liability resulted from the fact that when the contractor, Sicard, discovered that the plans were "erroneously drawn" he accepted and carried out instructions of the architect of the owner to drive the piles so close to the property of plaintiff that they were, in fact, "driven exactly against the last brick offset" of plaintiff's property. The court said that this "must have in the nature of things displaced the earth surrounding the work."
If a contractor, even on instructions of the architects of his principal, does work which he must know will damage plaintiff's property, he should be held liable in tort. But this was not in any sense the case here.
The judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of defendant, dismissing plaintiffs' suit.
Reversed.