BOLIN, Judge.
Sherrouse Realty Company, Inc. leased several tracts of land in Monroe, Louisiana, to Harmon E. Baird for farming purposes. On April 29, 1966, this land was inundated with water following heavy rains. Baird and Sherrouse sued T. L. James & Company, Inc., a road contracting firm, which company erected a temporary dam while working on a segment of Interstate-20. This dam allegedly interfered with the natural flow of water and caused the flooding of the farmland. James answered and made Ouachita Parish Police Jury a third party defendant on the theory it was the Police Jury’s duty to maintain the drainage. It is conceded that approximately 64 acres being farmed by Baird remained flooded for two or three days resulting in the loss of his first planting of cotton. For the expense of replanting this acreage, and for the reduction in yield, Baird sought $6,775 and Sherrouse sought $1,925 as damages. On *429 appeal their claims have been reduced to $4,650 and $1,230, respectively.
In a written opinion the trial judge found plaintiffs had failed to prove James’ action had caused the flooding of the land and rejected their demands. Plaintiffs appeal and since James has neither appealed nor answered the appeal the third party demand against Ouachita Parish Police Jury is not before us.
We think the overriding issue is whether the evidence substantiates the lower court’s finding that plaintiffs have failed to show by a preponderance of the evidence the T. L. James Company did anything which caused or contributed to the flooding and resulting damage to the farmlands.
The land in question is located in the “Selman Field” area east of the City of Monroe. This entire area, much of which is residential, is low and flat and the evidence establishes there had long been inadequate drainage prior to the incident made the basis of this suit. However, there was no direct testimony that the land had ever before been flooded as extensively as it was on the occasion involved in the instant case. The land was usually drained by numerous ditches and canals which had been constructed by the Ouach-ita Parish Police Jury or eroded by nature. Plaintiffs’ land and the Selman Field area are north of the construction work being done by James on the 1-20 Highway. All witnesses testified the normal flow of water drainage was from north to south, which meant much of the drainage had to eventually flow through a ditch or canal under the proposed 1-20, an east-west highway. James was constructing an outlet for this water underneath 1-20 in the form of a large, four-box concrete culvert. In order to complete the culvert it was necessary to erect a temporary dam or ramp north of the culvert to prevent the water from interfering with construction. This ramp was apparently used as a detour around the site and acted as a dam in the canal which ordinarily received the bulk of the run-off from ditches and canals to the north. It was also necessary to divert the water by means of a lateral ditch just north of the ramp or dam, and in this ditch a large metal culvert was placed.
• On or about April 29, 1966, following several days of substantial rainfall, water backed up and covered plaintiffs’ fields. It is plaintiffs’ contention the construction of the earthern ramp or dam interfered with the natural drainage which caused the water to back up to the north, resulting in the flooding of plaintiffs’ cotton fields, damage to which is the basis of this suit.
Numerous witnesses testified in the trial below, including lay witnesses living in the vicinity who said the flooding was the worst they had ever seen in this area. Several engineers testified, and plats were introduced into evidence which reflect ground elevation readings and the high water levels at numerous points in the vicinity where the flooding occurred, including the point where the dam was constructed. The testimony and plats show the ground elevation and the water were higher in the area flooded than at the point where the water ran over the earthern dam and proceeded south underneath 1-20, but the decision is not predicated solely on this evidence. The construction engineer who was in charge of the 1-20 project testified he was of the opinion the earthern dam did not in any way cause flooding of the farmland in the Selman Field area. He and other witnesses were of the opinion the flooding occurred because the flow of water through the numerous canals and ditches had become partially obstructed by the growth of weeds, small trees and the presence of flooding debris.
On the factual question of what caused or contributed to the damages sued for, we agree with the following finding of the trial judge.
*430 “The court is, therefore, convinced from careful study of the charts, plats, photographs and testimony that the flooding was caused by an unusual amount of rainfall which deposited excessive water over the whole area and which, in turn, accumulated and ‘backed up’ because the drainage system of the entire area north of the railroad was both inadequate and inefficiently maintained. On this record, to conclude that this water would have escaped and caused no damage but for the temporary interference at 1-20 would be sheer speculation.” (The railroad referred to is located north of, and parallel to, the 1-20 construction.)
Appellants argue the lower court not only erred in its factual finding but also in its application of the law to the case, and cite:
Johnson v. Gifford-Hill & Company, 174 La. 806, 141 So. 842 (1932);
Cornett v. Hebert, (La.App. 1 Cir. 1947), 31 So.2d 446;
Loesch, et al. v. Farnsworth, (La.App. Orl.1943), 12 So.2d 222;
Magee v. Texas Construction Company, 227 La. 32, 78 So.2d 500 (1955); and
Fontenot v. Magnolia Petroleum Company, et al., 227 La. 866, 80 So.2d 845 (1955).
We have examined all of these cases and do not find they announce any principles of law that would give comfort to appellants.
In Johnson the court had no difficulty in finding the defendant company liable in allowing sand from its gravel works to be deposited in the creek flowing into plaintiffs’ property which caused the creek to become choked and to dry up in the summer months when it was most needed.
In Cornett the court imposed liability on defendant who had built a dam across a ditch which interfered with drainage from the adjoining farm and caused the loss of a planting of grass on plaintiff’s land.
The Orleans Court of Appeal in Loesch denied recovery even though plaintiffs’ property was damaged by the work performed in the erection of a building on adjoining property. The decision resulted from the fact plaintiffs sued the contractor, under C.C.Art. 2324, and did not sue the adjoining landowner. The court held that even though the landowner might be liable under La.C.C.Art. 667, the contractor would only be liable if he were a tort-feasor or joint tort-feasor with the owner, and since there was no negligence on the part of defendant there was no liability. The rationale of this decision is criticized in 17 Tulane Law Review 596.
In Magee the Louisiana Supreme Court held defendant was at fault in the construction of a coffer dam in Pearl River, which caused inundation of plaintiff’s land and consequent damages to timber-cutting operations, and was therefore liable to plaintiff under La.C.C.Art. 2315.
In the last cited case Fontenot, defendant was held liable for damages caused plaintiff as the result of defendant’s blasting operations under La.C.C.Art. 667-668.
Clearly, in every cited case, with the possible exception of Loesch, the court found defendant’s actions caused the injury.
Reduced to its simplest terms we believe that whether liability is predicated on La.C.C.Art. 660 or on La.C.C.Art. 2315, or both, it is necessary for plaintiff to prove his damages or injuries were caused by the act of defendant. The trial judge determined this issue adversely to the plaintiffs and our review of the record has revealed no error in his conclusion.
For the reasons assigned the judgment is affirmed at appellants’ cost.