CULPEPPER, Judge.
This is a suit for damages resulting from the flooding of plaintiff’s home. He contends the cause was the negligence of the defendant, Department of Highways of the State of Louisiana, in failing to provide adequate drainage structures for a natural drain under its highway. From an adverse judgment on the merits, defendant appealed.
Plaintiff’s home is located in a rural area on Louisiana State Highway No. 6 a few miles north of the city of Many. The terrain is characterized by hills covered with pine trees and drained by creeks. *814 Highway No. 6, which runs generally north and south, was originally constructed in about 1930. A bridge was built across Blackwell Creek, which runs from east to west and has a watershed of approximately 3,000 acres east of the road. A short distance south of Blackwell Creek is a slough, which also runs from east to west and has a watershed of approximately 180 acres east of the highway. An 8' x 8' concrete box culvert was constructed under the highway for this slough. A wide ditch on the right of way ran along the east side of the highway from the slough to Blackwell Creek, providing additional drainage from the slough to the creek after heavy rains. The evidence shows that from 1930 until the events at issue here, there was no flooding of the land between the slough and the creek.
In 1963 plaintiff purchased approximately 2 acres fronting on the east side of the highway and lying between Blackwell Creek on the north and the slough on the south. Shortly thereafter, he obtained a permit from the Department of Highways to construct a “dry ramp” driveway, i. e., without a culvert, from the highway across the wide ditch to his property. This driveway was constructed near the north side of the slough.
In 1965 plaintiff constructed a one story brick home on his property. In April of 1968 plaintiff’s house flooded the first time. Following this flood, plaintiff contacted the state legislative representative from his district in an effort to have the Department of Highways install a culvert in his driveway to alleviate the situation. The district engineer for the department wrote a letter to plaintiff on April 22, 1969 reading in pertinent part as follows:
“As you know Mr. Melvin L. Jackson, Assistant District Engineer in charge of Maintenance, recently contacted you and made an investigation. It is my understanding that you informed Mr. Jackson that flood waters from the two streams between which your house is located caused flooding to your home recently during rains. Also that you would like for the Department to cut the dry ramp which provides a driveway, or entrance, to your home and install a side drain pipe.
“If flow was of such intensity and duration as to flood your home there is hardly any pipe large enough to provide adequate relief. We cannot understand why your area would flood because the 8' x 8' reenforced box culvert which is under the highway, and near your drive, has been there since approximately 1930 and has always been adequate. It was extended during the reconstruction of Route Louisiana Six three years ago.
“It is possible that the stream may be clogged below the highway. I would suggest that you check into the matter and have the blockage removed, if one exists, because it does not become a highway responsibility until such times as damage commences on the highway itself.
“We will be glad to issue you a permit for the installation of a culvert under your driveway if you still wish to install one there, but we cannot see that the Department of Highways has any obligation in the matter and we further feel that a culvert at the location would not afford relief if flooding occurs in your home.”
Although the Department agreed to issue to plaintiff a permit to install a culvert under his driveway, he did not request one. On May 7, 1969, after an unusually heavy rain, plaintiff’s house flooded again. This is the occasion for which damages were sought.
The district judge found the cause in fact of the flooding to be as follows :
“Considering the evidence that the water actually rose above the entrance to the box culvert that was installed to drain the slough and that there was no blocking of the slough channel, nor the nor *815 mal flow of water on the west side of Highway 6, I conclude that the box culvert was not adequate to drain the water that flowed in the slough on May 8, 1969. There was a wide ditch as previously stated, between the plaintiff’s property and the highway leading from the slough to Blackwell Creek. Hence, it is quite probable that the ditch from the slough to Blackwell Creek had drained any excess water that flowed in the slough from the time the box culvert was installed in 1930 until the highway was reworked in 1967. When the highway was reworked and the dry ramp was constructed as a driveway from plaintiff’s property to the highway without a culvert, it stopped the flow of excess water from the slough to Blackwell Creek. The very fact that a flood occurred in April of 1968, and soon after the defendant had completed reworking Highway 6, and again in 1969, in my opinion, supports the conclusion that the 8' by 8' box culvert had never been adequate to drain the water from heavy rains that were channeled into the slough on the south side of plaintiff’s property. But that the wide ditch leading from the slough to the creek, had carried off the excess water and prevented flooding. When the dry ramp was constructed it stopped up that escape route, and resulted in the two floods mentioned.”
The “reworking” of the highway referred to by the district judge occurred in about 1965-1967. It consisted of placing an asphalt overlay, approximately 4 inches thick on the existing blacktop, widening the shoulders, clearing and grading the right of way, constructing a larger bridge over the Blackwell Creek and lengthening the box culvert at the slough a few feet on the west end. Plaintiff’s original petition alleged that this construction work was the cause of the flooding, but there is no evidence to show that anything was done during the “reworking” of the highway which adversely affected the drainage situation. If anything, this work improved the drainage.
In the construction and maintenance of its highways, the Department of Highways has the duty to pj-ovide bridges, culverts or other works sufficient for natural or other existing drainage systems, and the department is liable for any damages caused by the blocking of such drainage. Grounds v. Louisiana Highway Commission, 180 La. 670, 157 So. 385; Schwartzenburg v. Louisiana Highway Commission, 184 La. 989, 168 So. 125; Connolly v. Louisiana Highway Commission, 177 La. 78, 147 So. 504. However, it is incumbent on the plaintiff to establish clearly that the damages were caused by the department’s failure to install adequate drainage structures along the highway, Holley v. State, 128 So.2d 908 (La.App. 2d Cir. 1961) and Baird v. T. L. James & Company, 240 So.2d 428 (La.App. 2d Cir. 1970).
Much of the testimony is by the respective experts for plaintiff and defendant as to the sufficiency of the 8' x 8' concrete box culvert to drain the slough under rainfall conditions which could be reasonably expected.- Mr. Cox, the State’s expert, followed Talbert’s Formula, which he says is widely used by highway departments, railroads, etc. He gave detailed computations as to the size of the watershed, the porosity of the soil, the slope, etc. and expressed the opinion that the box culvert was sufficient. On the other hand, defendant’s expert, Mr. Downs, said the culvert was not large enough. The trial judge resolved this conflicting testimony by giving great weight to the fact that soon after the dry-ramp driveway was installed, blocking the flow of excess water from the slough to Blackwell Creek, flooding occurred in two successive years, 1968 and 1969. This convinced the district judge that the box culvert was not alone sufficient to handle all of the drainage in the slough. We find no manifest error in this conclusion.
Although we find no error in the assessment of facts by the trial judge, we think he erred as to the applicable law. In particular, it is apparent the district judge thought the law placed a duty on the de *816 partment to provide an adequate culvert under plaintiff’s driveway. And that the failure to perform this duty, together with the inadequacy of the 8' x 8' box culvert, resulted in the flooding. The trial judge stated:
“It is my opinion that the 8' by 8' box culvert installed under Highway 6 by defendant to drain the water, which might flow through the slough on the south side of plaintiff’s property, was inadequate. It was the duty of defendant to provide adequate drainage. The fact of the inadequacy of the box culvert under Highway 6 coupled with the failure of the defendant, at the urgent request of plaintiff, to provide an adequate culvert under the driveway that crossed the ditch which had previously drained the excess water from the slough, in my opinion, was the cause of the flood that resulted in the damages complained of by the petitioner.”
LSA-R.S. 48:344 provides that driveways to private properties adjacent to state highways may be regulated by the highway department in accordance with rules established for the issuance of permits. The department’s memorandum #28, applicable here, reads in pertinent part as follows:
“The Department’s maintenance forces, equipment, or materials shall not be used in the construction or maintenance of private driveways except where (1) the Department removes or alters an existing driveway by reconstruction, or modifies existing drainage, or (2) where under construction, a connection is required by law or as a right of way consideration.”
LSA-R.S. 48:223(D) expressly prohibits the blocking of any drainage ditch along the side of the highway. It provides as follows:
“D. The blocking or impeding of any drainage ditch on, along, or across a highway, or the blocking or impeding of any natural drainage crossed, by any means is prohibited.”
Under these rules it is clear that the Department of Highways had no duty to provide a culvert under plaintiff’s driveway. Actually, the statutes and regulations expressly prohibit the use of the department’s labor or materials to construct or maintain a private driveway, except where the department removes or alters an existing driveway in the process of construction. In the present case, plaintiff’s driveway was not removed or altered by the department at any time.
Furthermore, the blocking by plaintiff of this drainage ditch along the highway from the slough to Blackwell Creek was a violation of the express provisions of LSA-R.S. 48:223(D) quoted above.
It is our conclusion that, pretermit-ting the issue of whether the department was negligent in failing to provide sufficient drainage for the slough, plaintiff was contributorily negligent in failing to construct his driveway in such a manner that it would not block the drainage along the wide ditch from the slough to the creek. This is particularly true since plaintiff, after the flooding in 1968, was aware that a cause of the trouble was the blocking of this ditch. With full knowledge of the hazard, he allowed the condition to remain and this was a cause of the reoccurrence of the flooding in 1969. We find plaintiff’s demands are barred by his contributory negligence.
In view of the conclusion we have reached, it is not necessary for us to consider defendant’s argument that the “phenomenal” rain on May 7, 1969 — five and one-fourth inches in about three or four hours — was an “act of God”, for which there is no liability.
For the reasons assigned, the judgment appealed is reversed and set aside. Plaintiff’s suit is dismissed at his costs, both in the trial and appellate courts.
Reversed and rendered.