274 So.2d 825 (1973)
Thomas J. D'ALBORA
v.
TULANE UNIVERSITY et al.
No. 4964.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1973.
Rehearing Denied April 3, 1973.
*826 Henican, James & Cleveland, C. Ellis Henican, New Orleans, for Thomas J. D'Albora.
Adams & Reese, Edward J. Rice, Jr., and John T. Cooper, New Orleans, for Frank J. Rooney, Inc. and Aetna Cas. & Surety Co.
Montgomery, Barnett, Brown & Read, Peter H. Beer, New Orleans, for Administrators of Tulane Educational Fund.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for Baldwin Equities Corp.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for S. K. Whitty & Co., Inc.
*827 Before REDMANN, LEMMON and BAILES, JJ.
REDMANN, Judge.
Plaintiff claimed damages to his buildings in the French Quarter in New Orleans resulted from construction of a hotel on immediately adjacent land. Plaintiff alleged damages of $2,500 to a recently-constructed four-apartment building on the rear of his lot and $19,591 to one wall of a 75- or 100-year-old building on the front of his lot. Plaintiff also demanded loss of rental income and other damages.
Defendants were the adjacent land's owner (The Administrators of the Tulane Educational Fund), the long-term lessee (Baldwin Equities Corporation), the lessee's general contractor and the contractor's insurer (Aetna), and the pile-driving subcontractor. (One other defendant, lessee of the future hotel building, was dismissed and is here disregarded.)
Tulane third-partied Baldwin and its insurer (Travelers), asserting a contractual obligation to indemnify and defend. Baldwin third-partied the contractor and its insurer, and they in turn third-partied the subcontractor, for indemnity. Defendants also excepted that the claim was prescribed by one year.
The prescription exceptions were overruled. There was judgment against defendants in solido for the claimed property damage. There was also judgment over in favor of Tulane against Baldwin, with further judgment for $3,105 as cost of defense. Other third-party demands were dismissed.
All defendants appealed. Plaintiff answered the appeals, seeking $5,000 increase for loss of rental, inconvenience, etc.
Issues include prescription, damage existence and causation, and liability of the various parties to plaintiff and among themselves (including Baldwin's liability for cost of Tulane's defense).

PRESCRIPTION
Defendants argue from Pachi v. Kammer, 130 So.2d 417, 421 (La.App.1961), that the one year prescription, C.C. art. 3536, commenced to run "when the plaintiff had sufficient knowledge to put him on inquiry and on his guard to ascertain the true facts."
Evidence that the damages were done more than a year prior to the November 26, 1965 filing of this suit includes: (1) a Shilstone Testing Laboratory, Inc. detailed report dated October 29, 1964 on an October 26, 1964 survey of damages to plaintiff's buildings; (2) a similar report on an October 30, 1964 resurvey restricted to the rear apartments' north wall; and (3) a November 10, 1964 letter from the contractor's project manager to an insurance agent noting "wall cracks" to plaintiff's buildings and promising copies of the Shilstone reports of damage when available.
But plaintiff claims that the damages became worse as construction continued. Plaintiff quotes Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627, 632 (1968), (quoting another case), in arguing that "the operating cause of the injury is a continuous one, giving rise to successive damages from day to day, and, under our law, in such cases prescription, whatever the length of time, has no application." The two Shilstone reports showed part of the damage became markedly worse in four days of continued pile-driving. More importantly, because of its date, the contractor's assistant project manager's report of January 8, 1965 shows damage not included in the October 1964 Shilstone surveys: the interior of the north wall of the apartment building has a ¼" to ½ separation from the ceiling.
It is undisputed that pile-driving continued beyond the October dates of the Shilstone reports. There is evidencea Shilstone report of falling-pin seismometer behavior during pile-drivingof driving until November 18. That report does not indicate that it covers the last of the pile-driving *828 (and it did not cover the first). Although it was testified that logs were kept which would have established the last date of pile-driving, they are not in evidence.
The record does not establish the date of last damage to plaintiff's buildings. Nor does it establish the date of the last pile-driving, which arguably could have been the date of plaintiff's last damage.
As Craig points out, it is defendant's burden to prove prescription. Here, the proof at best shows that some (detailed) damage was evident at a specific date more than a year prior to suit. But the evidence shows that pile-driving continued beyond that specific date, and that damage increased.
We interpret Craig to imply that there is no multiplicity of causes of action and of prescription-accrual dates for a continuously damaging operation such as pile-driving: there is one cause of action and one prescriptive period, which runs from the date the last part of the damage is done.
Defendants here did not prove plaintiff's cause of action prescribed. Their exceptions of prescription were properly overruled.

LIABILITIES
Although the record is eight volumes long, there is no evidence in this case of negligence. Liability therefore cannot be founded on negligence.
For damage to adjacent property resulting from work the owner causes to be done on his own property, the owner has been held liable under C.C. art. 667[1] without any showing of negligence on anyone's part; Hauck v. Brunet, 50 So.2d 495 (La.App. 1951), writ refused.[2] In other cases, such as Craig, supra, art. 667 has been accepted as the basis of the owner's liability.
A plurality opinion in Reymond v. State Dept. of Hwys., 255 La. 425, 231 So.2d 375 (1970), views C.C. art. 667 as inapplicable in cases of damage caused by the act of construction, and states that earlier cases (like Hauck and Craig) "fallaciously interpreted" art. 667 (though their results may be correct on other grounds).
However, in Chaney v. Travelers Ins. Co., 259 La. 1, 249 So.2d 181 (1971), the court reasserted the validity of founding the owner's liability on art. 667. Very importantly for our purposes, the court added (249 So.2d at 186):
"And the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission. This liability which the law imposes attaches also to the agent or contractor, who, as in this case, becomes solidarily liable with the proprietor if his activity causes damage to a neighbor."
It must be noted that in fact neither agent nor contractor was involved in Chaney, and accordingly the quoted language is not a holding which we are obliged to follow without further examination. But apparently a majority of our supreme court is of the view that art. 667 is a basis to hold not only owner but "agent or contractor" as well.
The Chaney minority indicated, albeit expressly denying the presence of the issue in the case, that it might be concluded "that an adjacent owner may recover damages caused him by activity on neighboring land, whether by the owner or another, such being `fault' [under C.C. art. 2315]. See Langlois v. Allied Chemical Corp., 256 La. 877, 239 So.2d 539 (1971)."
On reading Langlois, we are convinced that our supreme court has by clear implication *829 overruled earlier court of appeal cases (Loesch v. Farnsworth, 1943, La. App., 12 So.2d 222; Bruno v. Employers Liab. Assur. Co., 1953, La.App., 67 So.2d 920) which held non-negligent contractors not liable for pile-driving damages. Loesch had reasoned that non-negligent pile-driving damage "cannot be said to be the result of fault" (12 So.2d at 225) and thus the contractor could not be a solidarily liable tortfeasor under C.C. art. 2324. Bruno simply cited Loesch (erroneously stating "writs refused") as holding contractor and subcontractor not liable "in the absence of a showing of negligence * * *" (67 So.2d at 923).
The reasoning of the Langlois majority is, in part, that art. 2315 "fault" encompasses more than "negligence" (249 So.2d at 140):
"Here we find that proof that the gas escaped is sufficient, and proof of lack of negligence and lack of imprudence will not exculpate the defendant. The defendant has injured this plaintiff by its fault as analogized from the conduct required under Civil Code Article 669 and others, and responsibility for the damage attaches to defendants under Civil Code Article 2315."
The court itself then footnoted art. 667 as one of several others imposing "liability for fault which does not encompass negligence."
Pile-driving, like Langlois's gas-storing, 249 So.2d at 139, is "an activity which, even when conducted with the greatest of care and prudence, could cause damage to others in the neighborhood. * * *"
We conclude from our review of Reymond, Chaney and Langlois that the absence of negligence on a piling subcontractor's part is immaterial to his liability for damage caused by his pile-driving. Where causation is shown, the pile-driver's fault, in performing work he knows could damage neighbors, obliges him to repair the damage.
If the pile-driver caused injury through his independent negligence, his status as an independent contractor would ordinarily insulate other parties in the contractual chain from liability. But here there was no negligence shown.
Therefore, because liability arises not from negligence but from doing a work which (even well done) could damage the neighbor, everyone responsible for causing the work to be done is liable: owner, contractor, subcontractorand, in our case, the long-term lessee as builder.
Our owner contractually obliged the lessee to build a building of such proportions (62,000 sq. ft.) as to require several stories and therefore considerable pile-driving. The lessee in turn obliged the contractor, and the contractor then obliged the subcontractor, to do specified pile-driving.
None of these parties can claim freedom from causation, even if all can claim freedom from negligence. None can argue that the subcontractor did anything other than exactly what the contractor obliged him to do; which was what the lessee obliged the contractor to do; which was what (though not specified as to details) the owner obliged the lessee to do.
There was "fault" on the part of each in causing work to be done which they knew (or should have known) could damage neighboring property. (See also Gotreaux v. Gary, 1957, 232 La. 373, 94 So.2d 293, holding both landowner and his cropduster liable for cropdusting-caused damage despite absence of negligence, reasoning by analogy from C.C. art. 667.)
Accordingly, here owner, lessee-builder, contractor and subcontractor are liable in solido towards plaintiff, if causation of the damage is proved.

CAUSATION
It might be concluded, in accordance with certain expert testimony, that the absence of criss-cross cracking in wall plaster indicates that there was no damage attributable *830 directly and exclusively to pile-driving. But there is nevertheless evidence that the cracking that did unquestionably occur after pile-driving began was occasioned or at least greatly hastened and aggravated by the pile-driving. Even a defense expert who would conclude that the cracking was "coincidental" conceded that it could indirectly have been caused by the pile-driving subcontractor's shallow excavation work necessary to placing foundations on the piles.
The evidence more than amply supports the trial court's apparent conclusion that the damage to the rear apartment building was caused by pile-driving.
We are unable to justify a similar conclusion as to the front building's north wall's bulge. There is testimony by plaintiff and by an electrician who had earlier worked on the house that the bulge did not exist prior to the pile-driving. There is testimony from the contractor's assistant project manager (though contradicted by an expert) that the wall moved outward (as a whole, as did the rear apartment building wall): but there is no testimony supporting a conclusion that this outward movement (unlike that of the other wall) required wall replacement rather than gap repair. (Leaking from the roof-parapet gap was repaired by the contractor.)
The only expert testimony on the cause of the bulge was by a defense structural engineer. He testified that it had been built into the wall, and that the south wall also contained a similar bulge. The contractor's then project manager, a licensed general engineering and building contractor, testified that he too observed that the bulge had been constructed into the wall. We also note that cracking of the exterior cement plaster of that wall was minor, the only description being of two or three cracks; there is no explanation of how a portion of the brick wall could actually have moved from plumb into a bulge without considerable cracking of the cement finish.
Failure of the owner to have previously noticed the bulge, if it pre-existed, would not be unusual, according to one expert. He testified he has often pointed out bulges in older walls to owners who had not previously noticed them. We also note that the bulge is not discernible in the one photograph of that wall in evidence. While no one disputes the bulge's existence and visibility, it is nevertheless apparently not a prominent bulge.
We conclude it was error for the trial judge to accept the lay testimony that the bulge was previously non-existent under all the circumstances. Accordingly the award for reconstruction of the entire wall must be reversed. We would award the cost of repairing the minor cracking of the exterior cement plaster, but it is not shown.
Thus plaintiff's judgment will be for only $2,500.

INDEMNITY

Lessee to Owner
The contract contains two articles[3] indemnifying the owner. The first is perhaps *831 ambiguous. It is construable as obliging the lessee in all events to indemnify the owner against liability to adjacent "owners" arising from construction, and further obliging the lessee to pay and discharge liability and damages "occasioned to any person or persons * * *," by the lessee's negligence. But this article is also construable as only obliging the lessee to indemnify against liability caused by its negligence. However, the second article is not fairly construable as providing indemnity only in cases of lessee's negligence. Interpreting the articles by reference to each other, C.C. art. 1955, we conclude that the proper interpretation of both is that the indemnity against the owner's liability for damages arising out of construction does not depend on the contractor's negligence.
The owner is also entitled to cost of defense as "loss, costs * * * and expenses arising out of" construction. But the lessee seeks a 45% reduction of the trial court's allowance of $3,105 (103 hours at $30). We agree that the fees attributable to enforcing the right to costs of defense are not recoverable. They are a cost or expense "arising out of" not construction but breach of contract. The contract provides remedies for its breach, but we find no general provision for counsel fees in case of breach.
In appellate brief the owner's attorney asserts 103.5 hours were spent in "defense of the case", and that a 45% reduction "has no support in the record." But at trial, responding to a question of the "total number of hours you spent handling the case for Tulane", the owner's attorney testified that he "would estimate about 103.5 hours over the six-year period. I would say, in fairness, that about 45 of those hours would be attributable to [matters] which had to do more with the seeking of Travelers to defend the case than it had to do with the defense of the matter on the merits." Later, referring to "a total statement for services", he stated that if the court concluded he was not entitled to all of it (as cost of defense) "there would have to be an appropriate reduction. Q. In other words, we would have to reduce that by, say, 45%? A. I think that would be, that is as close as I can come."
We conclude the owner's defense consumed 58.5 hours and thus the lessee's cost-of-defense liability is reduced to $1,755.
(The lessee's alleged insurer was not cast and the owner does not on this appeal seek to cast the insurer.)

Contractor to Lessee
We find only one contractual provision which might relate to indemnity: the contractor "shall adequately protect adjacent property as prescribed by law and the contract documents." There was no *832 showing of any violation of a prescription of law or contract. We are unable to found indemnity upon the quoted language.
Nor is the lessee entitled to contribution of a virile share from the contractor under C.C. art. 2103 because of solidarity of liability towards plaintiff. We conclude that as between lessee and contractor the reparation of the damage caused by pile-driving, the requirement and specifications of which came from the lessee, is an affair which "concern[s] only one of the coobligors in solido, [and] that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities." C.C. art. 2106. The pile-driving was the lessee's business, which the contractor undertook for the lessee, and not as an equally-sharing partner of the lessee.

Subcontractor to Contractor
Similarly art. 2106 prevents indemnity or even contribution in favor of the contractor against the subcontractor. As between themselves the pile-driving and reparation of non-negligently resulting damages is an affair which concerns only the contractor.
To adopt the opposite view would ultimately oblige the skillful employee to indemnify (or at least contribute to) his employer or the general contractor or the owner: not because of negligence, imprudence or want of skill, but because the job he was given to do was likely to cause damage (and did).

RENTAL LOSS etc.
Plaintiff's claim for rental loss, annoyance etc. was properly denied.
In respect to the annoyance and the like, we conclude that that shown is within the "inconvenience" which C.C. art. 668 obliges a neighbor to tolerate. There was no showing of abusive behavior such as midnight pile-driving or other imposition not reasonably necessary to the defendant owner's exercise of his right to construct a building upon his property.
Similarly, as to the alleged rental loss (disregarding that vacancies perhaps equally occurred prior to construction), the inconveniences the tenants may have been unwilling to tolerate were not shown to have been beyond the inconvenience art. 668 allows the adjacent owner to impose.

DECREE
The judgment is amended to reduce the award on main demand and in judgment over to $2,500 (with interest from judicial demand), and to reduce the award for Tulane's cost of defense to $1,755 with legal interest from finality of judgment; and in all other respects the judgment is affirmed. Plaintiff is to bear the costs of this appeal.
Amended and affirmed.
NOTES
[1] "Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
[2] April 23, 1951; No. 40276.
[3] FIFTEENTH: LESSEE TO COMPLY WITH LAWS, ORDINANCES, ETC. IN DEMOLITION OR CONSTRUCTION WORK. In the demolition, excavating for, and construction of any building or buildings on the premises covered by this lease, and in the removing, rebuilding, repairing, altering, adding to or extending any party walls and foundations, Lessee will conform to and observe all laws, applicable thereto, and will further protect all buildings on adjacent premises to the extent required by said laws, ordinances, building codes, rules and regulations, and at all times will keep Lessor and the premises hereby leased indemnified against and discharged of any charge or liability in favor of the owners of such adjacent premises arising out of such operations by Lessee, and will pay and discharge all liability and damages occasioned to any person or persons resulting from such demolition, excavation or construction, or from such removing, rebuilding, repairing, altering, adding to or extending any such party walls and foundations, it such liability or damages is caused by the negligence of Lessee, its agents, servants or employees.

SEVENTEENTH: LESSEE TO KEEP BUILDINGS IN REPAIR. Lessee shall at all times during the term of this lease, and at its own expense, keep all buildings and improvements situated on the premises covered by this lease, in good order, condition and repair, ordinary wear and tear excepted, and shall at all times save and keep Lessor free and harmless from any and all damage or liability, occasioned by any act or neglect of Lessee, or any agent or employee of Lessee, or any tenant or person holding under Lessee, and shall indemnify and save harmless Lessor against and from any loss, costs, damage and expenses arising out of or in connection with the erection of any building or improvement upon said premises, or out of any accident or injury to any person or damage to property, whomsoever and whatever, due directly or indirectly to the use of the said premises, or any part thereof, by Lessee, or any other person or persons holding under Lessee, unless such accident, injury, or damage results from the active negligence or willful act of Lessor.
In response to argument based on the article captions, we note that art. 33 provides they "shall be in no way construed as forming part of this lease or in any way limiting or qualifying the provisions thereof."