341 So.2d 1196 (1976)
James J. GRAHAM, Jr.
v.
ALLIED CHEMICAL CORPORATION et al.
No. 11006.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writs Refused March 25, 1977.
*1197 James A. George, Baton Rouge, for plaintiff-appellant.
Daniel R. Atkinson, of Dale, Owen, Richardson, Taylor & Mathews, Eugene R. Groves, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellant-appellee.
Before LANDRY, COLE and CLAIBORNE, JJ.
CLAIBORNE, Judge.
On a finding of contributory negligence, the district court granted judgment dismissing the plaintiff's suit for damages resulting from an industrial accident in which he was seriously injured. The Workmen's Compensation insurer's intervention was likewise dismissed. Plaintiff and the intervenor appeal.
*1198 The arguments made are:
First, the cause of action results from defendant's strict liability (fault without negligence) to which contributory negligence is not a defense, because
a) defendant was allegedly engaged in an ultrahazardous activity, or alternatively
b) defendant's employees were so grossly negligent that their conduct can only be considered as defective or deficient in the sense contemplated by the Supreme Court in Loescher v. Parr, 324 So.2d 441 (La.1975).
Second, if contributory negligence is a recognizable defense in this suit, the court nevertheless erred in its determination that contributory negligence was proved.
Plaintiff, James J. Graham, Jr., a boiler inspector employed by Hartford Steam Boiler Inspection and Insurance Company, was injured while inspecting the mud drum of a boiler owned by defendant Allied Chemical Corporation and located at the latter's plant in Baton Rouge. Sometime prior to the date of the accident, Graham had been called by employees of Allied to arrange for the annual internal inspection of the boiler. Allied's maintenance engineer, Jules J. Noel III, met Graham on his arrival, and accompanied him on his inspection. Graham and Noel entered the mud drum which measured 36 inches in diameter by a length of approximately twenty feet, through an access hole 12 inches by 16 inches in the end of the cylindrical drum or boiler. According to Mr. Graham there were two such "manways", one on each end of the vessel. Eight to ten minutes later, Leon Jackson, one of Allied's operators "blew out" an adjacent boiler causing steam and hot water to enter the chamber which Graham and Noel were inspecting. Noel was close to the exit, and escaped uninjured, while Graham had to crawl about sixteen feet through steam and hot water to reach safety.
Suit was filed against Allied and its insurer, The Travelers Insurance Company; Noel; Jackson; Albert Farris and W. H. Davis, two of Allied's maintenance supervisors; Thurmun Dumus, one of Allied's operating supervisors; and Lawrence E. Rabalais, Allied's safety supervisor. Aetna Casualty and Surety Co. intervened to recover workmen's compensation payments made on behalf of plaintiff's employer.
Allied had in effect at the time of the accident a safe entry permit program which required a step-by-step safety procedure for securing a boiler for safe entry and inspection. The procedure required tagging all valves in the pipes entering the drum with a conspicuous tag which reads "Danger. Do Not Operate" on one side and "Danger. Do Not Remove this tag. See other side" on the other. In addition a "blind" or circular metal plate with a handle must be introduced in each pipe leading into the boiler at the flange nearest the boiler. The blind is bolted in place and effectively blocks the pipe so as to prevent the passage of extraneous gases and liquids. The handle or "tail" on the blind serves only as visual evidence of its presence in the line. After the check list is completed the safety procedures require that a safe entry permit be signed by a safety supervisor, maintenance supervisor and the operating supervisor of the current shift (7-3, 3-11, or 11-7), and that the permit be displayed in a prominent place near the entrance to the boiler. The entry permit states above the signatures, "I have checked the defined area and am satisfied that the precautions taken and to be observed will permit the work to be done without due hazard to persons or property." Completion of the procedures was a prerequisite to entry.
In this case the entry was made prior to completion of the safety procedures. No tags were displayed; no "blinds" were in place, and no entry permit had been signed.
The district court found that Noel was negligent in disregarding the safety procedures, and consequently attributed such negligence to his employer, Allied. The court also exonerated all other Allied employees from any negligence on the following findings with which we agree:
"The check list was being made, the work was in progress and the signatures *1199 on the form would have been affixed when the work was completed and the boiler made safe. There is no evidence of knowledge on the part of any other employee that the boiler inspection was imminent and that Graham and Noel would enter the boiler until the procedure was completed, the tags displayed and the entry permit was secured."
In concluding that Mr. Graham was barred from recovery by virtue of his own contributory negligence, the court said:
"Plaintiff, an experienced boiler inspector had been inspecting this boiler for some 17 years. He knew of the procedure in effect at the plant. He was well aware of the dangers involved and of the importance of the `blinds', the tags and the entry permit. He did not ascertain the issuance of the permit, did not look for the tags and did not make sure of the `blinding' of the inlets. Certainly this constitutes negligence on the part of one of his experience and one of his trade, or occupation to whom safety is a matter of everyday concern."
Plaintiff relies heavily upon the case of Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1975), and the principle it reiterates that contributory negligence is not a defense in a case where strict liability is imposed because of an ultrahazardous activity. He also argues that the number of activities which are so inherently dangerous as to constitute ultrahazardous activities and damage from which results in strict liability has been expanded to include the storage of lethal gas, Langlois, supra; blasting, Holland v. Keaveney, 306 So.2d 838 (La.App. 4th Cir. 1975); pile driving, D'Albora v. Tulane University, 274 So.2d 825 (La.App. 4th Cir. 1973); and crop spraying with insecticides, Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957). While these cases, including Langlois, generally depend upon rules of vicinage as expressed in Articles 667, 669 and others in the Civil Code chapter on servitudes imposed by law, it is clear from the Langlois case as prior jurisprudence is reviewed therein, that liability for injury suffered from dangerous activities is not limited to adjoining landowners, and the trend has been to an expansion of the classes of those who may recover as well as the classes of those from whom recovery may be obtained. We must therefore consider whether the defendant's activities must be classified as ultrahazardous in the light of the available definition of this term by the Supreme Court.
In the Langlois case the court refers to ". . an activity which, even when conducted with the greatest of care and prudence, could cause damage to others in the neighborhood. It was an ultra-hazardous activity, and the possible consequences of harm were known or should have been known." (Emphasis added.) The Court in the same case speaks of ". . . activities which create a foreseeable harm to those in the neighborhood, even when conducted with the greatest of prudence and care . ." (Emphasis added.)
It appears from these statements that in order for an activity to be classified as ultrahazardous two elements must appear: 1) that harm is a possible consequence even when the activities are conducted with the greatest care and prudence, and 2) that such possible harm is foreseeable (see e.g., Holland, supra).
Plaintiff contends that an activity requiring entry of a boiler for inspection with the risk of "being literally boiled alive in a cask of steam and scalding water" must be viewed as ultrahazardous. We can pretermit the defendants' response that boiler inspection was not Allied's activity but that of plaintiff and his employer. We need only consider whether the activity was in fact ultrahazardous. We find it was not. It is clear from the evidence that with the exercise of simple ordinary care and prudence the danger of harm would have been eliminated. If Allied's employee Noel (deferring for the moment consideration of plaintiff's own responsibilities) had followed the established safety procedures or ascertained that they had been followed before *1200 entry, the damage could not have occurred.
Plaintiff also argues that an employer's liability for the torts of its employees is strict liability when the employees' conduct is grossly negligent so that such employees must be considered defective or deficient. Plaintiff reasons by analogy from the case of Loescher v. Parr, 324 So.2d 441 (La.1975), the case of an apparently healthy but 90% rotted magnolia tree that fell and demolished a Cadillac.
The Supreme Court in that case, while discussing damage caused by the vice of a thing, held that when harm results from "conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved." (Emphasis added.) The creation of an unreasonable risk of harm to others is equated with negligence in the following language:
"Likewise, under Article 2320 it has long been settled that a master (employer) is liable for the harm caused through his servant's (employee's) unreasonable creation of risk of injury to others (negligence), despite the freedom from personal negligence of the master thus vicariously held liable. * * *
"Further, as noted, we have previously adopted the concept of legal fault without personal negligence of a parent for the deficient act of his child (Article 2318), of an employer for the deficient act of his employee (Article 2320), of an owner for the damage caused through the deficient act of his animal (Article 2321), and of an owner for the damage caused by the defect of his building (Article 2322)." (Emphasis added.)
It would be incorrect to infer from the foregoing language that in all these cases liability is based on fault without imputed negligence, or that such liability is not amenable to a defense of contributory negligence. The Supreme Court in Loescher recognizes there is no liability where the "owner or guardian responsible for the person or thing" proves "the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force." Contributory negligence remains a defense recognized in our law in cases grounded on the employer's liability for the torts of his employees. That such torts may be imputed to the employer in a derivative or vicarious manner without a finding of personal negligence on the employer's part, does not affect the availability of the defense.
Plaintiff was a boiler inspector with 28 years experience. He was fully aware of the dangers of entering an unblinded boiler. He was familiar with the particular boiler, the surrounding premises, and Allied's safety procedures. As a business invitee he assumed all the normally observable or ordinary risks attendant upon the use of the premises, and the owner is not liable to such an invitee for injury resulting from a readily observable danger or one which he should reasonably have appreciated before exposing himself to it.
Plaintiff's contributory negligence as found by the district court was supported by the evidence.
In resisting the finding of contributory negligence appellant also forcefully argues that the case of Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855 (La.App. 4th Cir. 1975), expresses the law applicable to this case by setting forth the standard of care required of a worker to protect himself from the danger of job related accidents. Plaintiff in that case was seriously injured when a load being hoisted by a crane fell on him from a height of 160 feet. Negligence was undisputed. It was argued that Morgan was contributorily negligent in violating a basic safety rule known to all experienced construction workers against standing beneath a load of material being moved. The court found that when Morgan was injured he was in an area where his duties required him to be. It is argued that Graham also was where duty required, but the determining fact in Morgan which distinguishes *1201 it from the present case is that according to the established safety procedures silence and absence of warning were the assurance of safety, while in the present case the absence of visual assurances of safety was itself a warning of danger and a prohibition against entry into the place of danger.
The safety rule in the Morgan case provided:
"The following procedure shall be followed when cranes are working in an area where other activities are being conducted. The contractor operating the crane shall assign a man to warn all craftsmen in the area when a load is about to pass overhead. After being warned, it is the responsibility of those in the danger area to move to a safe spot until the load has passed. There will be no exceptions to this procedure and neither party can shift his portion of the responsibility to the other party."
The court said:
"Thus Morgan could reasonably assume the safety rule would be obeyed on the construction site and that he could safely stand near the boiler where his crew worked. Absent a warning to the contrary, Morgan should have reasonably been able to assume he was not endangered by objects being moved through the air."
In the case at bar the failure of the appellant to observe danger tags on the valves, his failure to observe a "blind" in the proper place, and his failure to notice a posted entry permit (all of which were in fact missing) should have warned him that the boiler was not safe for entry. Under the safety rules in effect, all persons familiar therewith were warned of danger in the absence of very specific assurances to the contrary, and in the absence of such warnings duty prohibited entry. The fact that Graham noticed other boilers had been made safe and that he saw blinds and tags in other areas did not justify his assumption that the mud drum he entered would be safe. Such a conclusion was clearly shown to be unreasonable, since he knew that boilers were shut down for inspection in turn rather than all at the same time.
The judgment of the district court is affirmed at appellant's cost.
AFFIRMED.