No. 3838

Second Circuit

PARROTT v. BABB

(January 27, 1931. Opinion and Decree.)

T. A. Carter, of Alexandria. attorney for plaintiff, appellant.

Overton & Hunter, of Alexandria, attorneys for defendant, appellee.

DREW, J. Miss Sallie E. Parrott, a femme sole, sued Jim Babb for $1052.50, alleging that she had rented from H. B. Mosely a certain tract of land in Rapides parish, Louisiana, which is commonly known as the "Mosely Place"; that the place is located within the "no fence law" district of Rapides parish; that she intended to farm said land and had it broken up and planted in cotton, corn, sweet potatoes and other farm produce; and that about the middle of May defendant's cattle, alleged to be outlaw cattle and which would break any kind of fence, proceeded

to come in upon your petitioner's crop and damage same. That again in June the cattle made another raid upon her crop, completely destroying it, and continued to run in her field thereafter. That the cattle complained of consisted of sixteen head. She further alleges that she had made repeated demands upon defendant to keep his cattle up. She alleges that the crop destroyed consisted of corn, to the value of $300; cotton, to the value of $50; sweet potatoes, to the value of $150; hay, $300; and cantaloupes, to the value of $20; also damage to fence, $25, and velvet bean crop, $100. Petitioner further alleges $60 damages in keeping up her own stock and $50 damage, by reason of calves from her thoroughbred cattle being mixed with the outlaw cattle of defendant. She alleges amicable demand and prays for judgment accordingly.

Defendant answered denying the allegations of plaintiff's petition and alleged that plaintiff wilfully and negligently permitted gaps in her pasture fence and in her field fence, and permitted her own cattle, as well as the cattle of others, to roam through and depredate upon her field. He alleges that she could have repaired her fence at a very small cost; and pleads in the alternative contributory negligence based on the above allegations as a bar to her recovery; and assuming the position of plaintiff in reconvention, alleged that plaintiff caused the shooting and killing of one of his cattle and the poisoning of another, alleging the value to be $170; and prays for judgment in reconvention for said amount.

On these issues, the case was tried in the lower court, resulting in judgment for defendant, rejecting the demands of plaintiff, and from which judgment plaintiff has appealed.

Plaintiff's suit was based mainly upon the supposition that the farm she was renting was protected by the "no fence ordinance" of the police jury of Rapides parish, and on trial she offered in evidence an ordinance of the police jury of Rapides parish purporting to be a "no fence law" ordinance. This offering was objected to by counsel for defendant upon the ground that the ordinance offered was not a "no fence law" ordinance, as well as upon the ground that its introduction was not admissible under the pleadings, there being no allegation of the adoption and promulgation of such an ordinance. The objection was sustained by the lower court and counsel for plaintiff reserved a bill and stated that he would attach a copy of the ordinance to the bill. No copy was attached and is not in the record; therefore, there is nothing before this court to be ruled upon and the presumption is that the ruling of the district court is correct and that the ordinance was not such as is alleged in plaintiff's petition.

There is no evidence in the record to support the allegation that the place rented by plaintiff was in the "no fence law" district of Rapides parish, and the right of plaintiff to recover will have to be determined by the law applicable to open range territory—that is, plaintiff must show that the land in question was enclosed by a fence that would keep out ordinary cattle.

Plaintiff alleged that defendant's cattle first depredated upon her crop about the middle of May, and again in June entered her place and totally destroyed her crop. When she testified in chief, she said that

defendant's cattle first depredated upon her crop either the last of May or the first of June and that they continued to come into her field and destroy her crop during the month of June; that she made an appointment with defendant to meet him on July 2nd for the purpose of discussing the matter of his cattle breaking into her enclosure; that defendant failed to keep the appointment and, finding it impossible to keep the cattle out, that she abandoned her crop in the month of July. She testified that at the time she abandoned the crop her corn was tasseling, the cantaloupes were turning, the cotton practically laid by and the velvet beans had been laid by—all of which is consistent with her testimony as to the time of year she abandoned the crop. Her testimony was fully corroborated by that of her employees who lived on the place and planted and worked the crop.

Defendant, in answer to this proposition, proved by a number of witnesses that at the time plaintiff testified that the cattle made the first raid in the last of May or the first of June, the fencing around her place was down, with gaps in same, trees falling across part of it, and that it afforded no protection against the invasion of her crop by cattle. He also testified that plaintiff's own cattle were often seen in her crop, due to the fact that there were gaps in the field fence. In fact defendant's testimony conclusively shows that in the latter part of May and the first of June plaintiff's crop was not protected by a fence sufficient to keep out the ordinary run of cattle.

After defendant had closed his case, plaintiff in rebuttal took the stand and testified as follows:

"Q. There has been much said about the condition of your crop in June and July, and much said about your fence. I will ask you when you abandoned your crop?

"A. In May, because the cattle began breaking in there and we couldn't keep them out. We tried to keep them out and couldn't.

"Q. What time in May?

"A. About the tenth of May.

"Q. After the abandonment of your crop, did you make any effort to keep your fences up?

"A. Not the field fence, no.

"Q. Then after these cattle tore the fence down, after that time, you left it down?

"A. Certainly did, the field fence.

"Q. You heard these various witnesses testifying about the latter part of May and the first of June?

"A. Yes, sir.

"Q. You had already abandoned your crop at that time?

"A. Yes, sir, I certainly had, about the 15th of May. * * *"

Plaintiff then placed upon the stand Mrs. Duplissy, her employee, who was living on the place and who testified that they abandoned the crop not later than the 15th of May. Then C. T. Tubre, another of her employees, testified that they abandoned the crop about the 15th of May and no attempt was made to keep the fence up after that.

The testimony of plaintiff and her chief witnesses in rebuttal is directly in conflict with their testimony in chief and is offered after the defendant by his testimony and that of his witnesses had completely destroyed the case plaintiff had made out in chief. There is no attempt made by plaintiff to explain this conflict or why, in putting on her case in chief, and in her pleadings, she had alleged and sworn that the cattle of defendant first entered her crop the latter part of May

or the first of June and that she abandoned her crop in July, and then in rebuttal testify that she had abandoned her crop not later than the 15th of May. The two lines of testimony are irreconcilable, and for the court to say which is correct would be only to hazard a guess. It would be extremely dangerous for any court to render judgment on testimony so contradictory as this. However, the court could assume that either or both of her statements as to the time are correct and then could not render judgment for plaintiff. If her testimony in chief is correct, it has been clearly shown by a preponderance of evidence that in the latter part of May or the first of June, her land was not properly enclosed by a fence; that in several places, trees had fallen across it, and at other places there were gaps sufficient for any kind of cattle to walk in unmolested. And if she abandoned her crop not later than May 15th, there is no testimony in the record to show the value of the crop at that time. She has utterly failed to show the cost of making the crop or even an estimate of what it would have cost to have matured the crop, and no item of damage as alleged is fixed with any degree of certainty such as would justify a court in rendering a judgment for her.

The evidence clearly shows that plaintiff cultivated a hay meadow of from fifteen to twenty acres, consisting of alfalfa and grass mixed, and possibly a like amount in corn, cotton, sweet potatoes and cantaloupes. The stand of cotton, corn and beans in the corn was very poor. There were only a few rows of cantaloupes and about one acre of cotton. It is very doubtful from the testimony that if the crop had been cultivated until it matured, that it would have paid the cost of cultivation. However, we cannot guess at what it would have made or what it would have cost to make it without some evidence in the record to govern. In this record, we have not that evidence.

Plaintiff strenuously contends that there is one item of damage of $50 that is proven without contradiction—that is, the item for the half-breed calves. The evidence shows beyond doubt that plaintiff's cattle ranged outside of her enclosure, on the bayou and in the edge of the swamp, where defendant's cattle were raised and that there was nothing to prevent her cattle from running with those of defendant.

It was incumbent upon plaintiff to show that her place was within the "no fence law" district or to show that her place was enclosed with a fence that would keep out the ordinary run of cattle. She has failed in both instances.

We are sure that the theory of plaintiff's case was that her land was located in the "no fence law" district and when she failed to prove this, she then attempted to show that the place was properly enclosed.

The lower court found that she had failed in this respect and we see no error in his decision. It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with all costs.