208 So.2d 550 (1968)
Wilson TRAHAN, Plaintiff-Appellee,
v.
FLORIDA GAS TRANSMISSION COMPANY, Defendant-Appellant.
No. 2230.
Court of Appeal of Louisiana, Third Circuit.
March 27, 1968.
*551 Shotwell, Brown & Sperry, by Burt W. Sperry, Monroe, for defendant-appellant.
Mouton, Beard, Plaisance & Franques, by Caliste Beard, Lafayette, for plaintiff-appellee.
Before FRUGE, CULPEPPER and HOOD, JJ.
*552 HOOD, Judge.
Plaintiff, Wilson Trahan, instituted this suit to recover damages alleged to have been sustained by him as the result of the construction by defendant of a gas pipeline across property which was subject to a surface lease in favor of plaintiff. The suit was instituted against Florida Gas Transmission Company. Judgment was rendered by the trial court in favor of plaintiff, awarding him damages in the sum of $1567.90. Defendant has appealed, contending that the award was excessive.
Plaintiff holds two surface leases affecting two adjoining tracts of land in Lafayette Parish. Alton Martin is the owner and lessor of one of these tracts. Both of these leases are dated August 18, 1963, and they provide that plaintiff is to use the leased property for conducting a dairy business. Mr. Trahan has conducted a dairy business on that property since the leases went into effect.
On April 7, 1966, Alton Martin, one of plaintiff's lessors, granted to defendant a right of way or easement over a part of the 42 acre tract of land which had been leased to plaintiff for the purpose of enabling defendant to construct a natural gas pipeline across it. The right of way so granted covered a strip of land 775 feet long, and the contract provided that it was to be 50 feet wide during construction, reverting to a width of 30 feet after construction was completed. The agreement contained the following stipulation:
"Grantee hereby agrees to bury all pipes to a sufficient depth so as not to interfere with cultivation of the soil and agrees to pay damage to grass, growing crops and fences which may arise from the construction, maintenance and operation of said lines and of which Grantor's negligence is not a contributing cause."
On April 15, 1966, plaintiff executed a "Tenant's Consent," which provides that for the consideration therein recited plaintiff consents to the exercise by defendant of all rights held by it under the right of way agreement between the landowner and defendant, "with the understanding that the damages to the tenant's portion of any growing crops on the above described land, if any, accruing from the exercise by Florida Gas Transmission Company, its successors and assigns, of the rights granted to it by the above described right of way agreement, shall be paid direct to Wilson Trahan * * *"
Defendant commenced operations for the construction of the pipeline across this property on May 8, 1966, and the project was completed on June 14, 1966.
In this suit plaintiff demands judgment for several items of damage which he contends were sustained by him as the result of the construction of this pipeline. The trial judge rendered judgment in favor of plaintiff awarding him some of the damages which he claimed. On this appeal defendant contends that the trial judge erred in awarding plaintiff five of the items of damage claimed by him, each of which awards will be discussed separately.
First, defendant contends that the trial judge erred in awarding damages in the sum of $500.00 for "inconvenience and mental anguish."
Plaintiff alleges that defendant failed to properly barricade the exits it had made in a barbed wire fence surrounding the leased land, thereby causing plaintiff "undue extra work and inconvenience in his having to round up his cattle that escaped in the gaping holes left in the fence by workmen of the defendant company." He demands damages in the amount of $1,000.00 "for the inconvenience, mental anguish and extra work involved therein."
Plaintiff testified that some of his cattle escaped "three or four or five times" while the pipeline was being constructed, and that it was necessary for him, with the assistance of his wife and children, to *553 get the cattle back into his pasture. The evidence shows that defendant did not leave any gaping holes in the fences while the work was being done, but that some of plaintiff's cattle escaped on not more than five occasions by getting into a trench which had been dug by defendant for the purpose of laying the pipe. The trench went under a fence which enclosed a pasture, and some of plaintiff's cattle got out of that enclosure by walking in that trench under the fence and into the adjoining pasture. Plaintiff concedes that the trench through which the cattle escaped existed for only about a week before it was filled up, and that it was during that period of time only that the cattle could escape. He testified that on the first occasion three head of cattle escaped, and that the greatest number of cattle which escaped at any one time was about 10 or 12 head. On at least one occasion the cattle got into a neighbor's corn field and damaged the crop of corn. The neighbor on two occasions discussed with plaintiff the matter of repairing the damage to his crop, and after each such discussion plaintiff contacted a representative of defendant who apparently settled with the neighbor since plaintiff has heard nothing further from him.
The jurisprudence is settled that in a tort action damages may be awarded for inconvenience, mental anguish and worry occasioned by injury to one's property. Lambert v. Allstate Insurance Co., 195 So.2d 698 (La.App. 1st Cir. 1967); Holmes v. LeCour Corporation, 99 So.2d 467 (La. App.Orl. Cir. 1958); Seals v. Hartford Accident and Indemnity Company, 88 So. 2d 732 (La.App. 1st Cir. 1956); Rotolo v. Stewart, 127 So.2d 24 (La.App. 1st Cir. 1961); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955).
In view of the fact that the trench through which the cattle escaped existed for only about one week, and that some of plaintiff's cattle escaped on only three to five occasions, we think the award of $500.00 made by the trial court is excessive. In our opinion the award should be reduced to $200.00.
Defendant's second assignment of error is that the trial judge erred in awarding plaintiff $150.00 for the loss of a hay crop, and the third assignment of error is that the court erred in awarding plaintiff the additional sum of $102.90 for the expense which he allegedly incurred in applying fertilizer and nitrate to the soil on which the hay crop was raised.
Plaintiff testified that he devotes a part of the leased property solely to the raising of hay, that he usually makes two cuttings of hay every year, that he made only one cutting in 1966 because of the construction of this pipeline and that he thus lost a portion of his hay crop which he valued at $700.00. The evidence indicates that defendant left an opening in a fence which separated plaintiff's pasture from his hay field, with the result that the latter's cattle roamed in the hay field and destroyed about seven acres of his hay crop. Plaintiff estimated that he would have produced from 50 to 100 bales of hay per acre at the harvest if the crop had not been destroyed. He stated that hay sells for $1.00 per bale, and that he thus is entitled to recover $700.00, that being the market value of the crop of hay which he would have harvested if he had not been prevented from doing so.
The trial judge concluded that as a result of the laying of this pipeline plaintiff lost one cutting of hay from a seven acre tract of land, and we concur in that finding. The evidence supports plaintiff's testimony that the market value of hay is $1.00 per bale and that the average yield of hay in that community is from 50 to 100 bales per acre. The evidence does not show how much expense was incurred by plaintiff in planting and cultivating the hay, and it does not show the cost of marketing, harvesting and maturing the crop. The trial court found that plaintiff had applied fertilizer and nitrate to the soil that year at a cost of $102.90. Defendant *554 argues that according to the evidence, the fertilizer and the nitrate were not applied until after the pipeline had been constructed. Our review of the record convinces us that the trial judge was correct in holding that these substances were applied to the soil before the construction work began.
The criterion generally used in determining the amount of damage which should be awarded for the loss of growing crops, is the average yield and market value of the crops of the same kind, planted and cared for in the same manner and in the same area, less the cost of marketing, harvesting and maturing the crops. The market value of such a crop is the price which the crop would have brought in a matured state at a sale in that community. Watkins v. Gulf Refining Co., 206 La. 942, 20 So.2d 273 (1944); Dubois v. Phillips Petroleum Co., 221 La. 161, 59 So.2d 107 (1952); Boudreaux v. Thibodeaux, 149 La. 400, 89 So. 250 (1921); Stoufflet v. United Gas Pipe Line Company, 162 So.2d 828 (La.App. 1st Cir. 1964).
The general rule could not be applied in the instant suit because the evidence did not establish the cost of marketing, harvesting and maturing the crop. Under those circumstances the trial judge allowed plaintiff the expenses which were shown to have been paid by him in cultivating the crop, that is $102.90 for fertilizer and nitrate, and the additional sum of $150.00, which the trial court apparently considered to be the estimated profit which plaintiff would have made on the day crop if the crop had not been destroyed. We cannot say that the trial judge erred in making that award.
Defendant contends next that the trial court erred in awarding plaintiff $350.00 as damages for the loss of a crop of millet, and the sum of $240.00 as reimbursement for the expenses incurred by plaintiff in plowing and reseeding approximately six acres of land for the purpose of raising a crop of millet.
The evidence shows that millet is a type of grass which is ideal for use as fodder for cattle, and that dairy farmers commonly plant that type of grass for their own use in pasturing their milk cows. It is not harvested or marketed, as is a crop of hay, and thus millet has no market value. Cattle are simply permitted to graze on the millet, beginning about four or five weeks after it has been planted, and a field of millet usually can be used for cattle grazing for a period of from six weeks to two months after it first becomes mature enough to be used for that purpose.
Plaintiff testified that he was plowing a six acre tract of land for use as a millet crop when the construction of the pipeline began. He discontinued his plowing at that time, and in this suit he has demanded an award of $1200.00 for the loss of the millet crop. He claims that as a result of his being prevented from planting and raising a crop of millet, his feed bill was increased and he suffered a "loss of milk production."
Although plaintiff testified that he began plowing "the first of May" and that he stopped when construction of the pipeline began on May 8, 1966, the evidence fails to show what expenses he incurred in doing this plowing. The evidence shows, and plaintiff concedes, that he never planted or reseeded a millet crop that year. The trial judge found, and we agree, that the evidence fails to show that plaintiff sustained any loss of milk production during that period.
The trial judge stated that he felt that plaintiff was entitled to some damages for the loss of the crop of millet, and that he experienced difficulty in arriving at a proper formula to make a determination of the loss. He held, however, that "when damages cannot be specifically determined the court in its discretion can make a general award," and he thereupon awarded plaintiff the amounts hereinabove set out for loss of the millet crop and expenses.
*555 As we have already noted, plaintiff did not have a "growing crop" of millet at the time the construction work began, and even if such a crop had been growing at the time it would have had no market value when and if harvested. The record does not show what costs or expenses were incurred by plaintiff in plowing the six acre tract of land, although it seems to us that those costs could be accurately measured and proved, and the evidence shows that millet was never planted or reseeded on that land. After considering all of these facts, we have concluded that the trial court erred in awarding plaintiff the sum of $350.00 as damages for the loss of the millet crop and the additional sum of $240.00 as reimbursement of the expenses incurred by him in plowing and reseeding a six acre tract of land for raising such a crop.
Defendant contends, finally, that the trial judge erred in awarding plaintiff $100.00 for the loss of the use of 2.39 acres of pasture land.
The evidence shows that after the pipeline had been constructed defendant undertook to restore the property, included in the right of way, to its former condition. In doing so defendant used bulldozers, caterpillar tractors and motor patrols. Plaintiff contends that the use of these machines disturbed the topsoil to such an extent that 2.39 acres of his dairy farm was rendered useless for pasturage purposes.
The trial judge concluded that although "there is little or no proof concerning this loss," he felt that a part of the winter foliage on this 2.39 acre tract was destroyed by defendant's operations, and that plaintiff sustained a loss of $30.00 per acre as a result of this damage. He thus awarded plaintiff the sum of $100.00 for the loss of the use of 2.39 acres for pasturage purposes.
We agree with the trial judge that the use of heavy machinery by defendant for the purpose of restoring the property to its former condition did cause plaintiff to lose the use of approximately 2.39 acres for pasturage purposes for the remainder of the year 1966. The law is settled that where damages cannot be accurately measured or proved, the trial court is vested with considerable discretion in the assessment thereof, as may be warranted by the facts and circumstances in each particular case. Nickens v. McGehee, 184 So.2d 271 (La.App. 1st Cir. 1966, writ refused); Campo v. LaNasa, 173 So.2d 365 (La.App. 4th Cir. 1965, writ denied). In the instant suit we find no abuse of discretion on the part of the trial court in awarding plaintiff $100.00 for the loss of the use of approximately 2.39 acres for pasturage purposes during and after the construction of this pipeline.
For the reasons herein set out, the judgment appealed from is amended by reducting the award made to plaintiff from $1567.90 to the sum of $677.90. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellee.
Amended and affirmed.