228 So.2d 494 (1969)
Percy FALL, Plaintiff-Appellant,
v.
Nolan MANUEL, Defendant-Appellee.
No. 2869.
Court of Appeal of Louisiana, Third Circuit.
November 25, 1969.
*495 Donald Soileau and John Saunders, Mamou, for plaintiff-appellant.
Young & Burson by I. J. Burson, Jr., Eunice, for defendant-appellee.
Before SAVOY, HOOD, and MILLER, JJ.
*496 HOOD, Judge.
Plaintiff, Percy Fall, instituted this action against Nolan Manuel to recover damages to his crop of corn, which damages allegedly were caused by cattle owned by defendant. Judgment was rendered by the trial court in favor of defendant, rejecting plaintiff's demands for damages, ordering plaintiff to open a gate which he had padlocked separating the properties of plaintiff and defendant, and ordering plaintiff to enclose his land by constructing a fence sufficient to keep cattle from roaming. Plaintiff has appealed.
Several issues are presented, the principal ones being: (1) Were the damages to plaintiff's crop caused by defendant's cattle? (2) Was defendant negligent in allowing the cattle to roam on plaintiff's property? (3) Is plaintiff barred from recovery by his own contributory negligence in failing to enclose his corn crop with fences? (4) Did the trial court err in ordering the plaintiff to open a gate and to enclose his property by a fence?
During the 1966 crop season plaintiff planted a crop of corn on a tract of land which he had leased from R. T. Herrin, in Evangeline Parish. This land was bounded on the west by property which was under the management and control of defendant. The two tracts of land which were being occupied by these parties were separated by a public road or lane which ran north and south along the boundary line. This public road or lane intersected or formed a junction with a black-topped highway which ran east and west along the north line of both tracts.
A fence had been constructed along the north boundaries of both of these tracts of land, parallel to and immediately south of the black-topped highway. That fence extended across the public lane which ran south from the black-topped highway, there being a gate across this roadway at that point. Plaintiff's property was enclosed by fences on three sides. The above-described fence was on its north boundary, and there were fences on the east and south boundaries. There was no fence along the west side of plaintiff's property, however, it being bounded on that side only by the above-mentioned public lane. Defendant's property was enclosed on the north, the east, and south sides, his east fence running parallel to and along the west side of the public lane which separated the two tracts. There also was a lateral fence running east and west on defendant's land, which lateral fence joined his east fence at a point about 400 feet south of the black-topped highway.
During the spring of 1966 plaintiff padlocked the gate which controlled the entrance from the black-topped highway to the public roadway which separated his tract from the land owned by defendant, and he refused to let defendant or his tenants go through that gate. Defendant thereupon, in order to enter his property from the highway, constructed a new roadway running southward from the black-topped highway a distance of about 400 feet to the lateral fence on defendant's land. The new roadway was 20 feet wide, and it was located parallel to and immediately west of the existing public lane. In order to obtain access from the black-topped highway to this new roadway, defendant installed a gate in his north fence, immediately west of the gate which plaintiff had padlocked. He installed another gate in his lateral fence, near the point where it joined his east fence.
In order to construct his new roadway in that location, it was necessary for defendant to remove completely that part of his east fence which extended from the blacktopped highway south a distance of about 400 feet to the point where it was joined by the lateral fence. After the new roadway was constructed by defendant in May or June, 1966, there was no fence separating the north 400 feet of defendant's property from the northern portion of plaintiff's land, and any cattle which happened to be there could easily roam from the north part of one tract to the north part of the other.
*497 Plaintiff planted approximately eleven acres of corn in the northern part of his property in the spring of 1966, and defendant planted a crop of soybeans in the northern portion of his property during the spring of the same year. Defendant had leased a part of his land, located south of the lateral fence, to a tenant who planted and raised a crop of potatoes there that year.
Sometime in October or November, 1966, a herd of cattle invaded plaintiff's corn field and destroyed a part of the corn crop which plaintiff contends was then ready to be harvested. Plaintiff demands damages for the loss of his crop, contending that the cattle belonged to defendant and that defendant is liable for those damages under the provisions of LSA-C.C. Art. 2321. Defendant contends that the cattle which invaded plaintiff's field did not belong to him and that he thus is not liable for any damages which plaintiff may have suffered. Alternatively, he denies any negligence on his part, and he specially pleads contributory negligence on the part of plaintiff as a bar to his recovery.
The testimony is conflicting as to whether the cows which invaded plaintiff's land and damaged his corn crop were owned by defendant. We have reviewed all of this testimony, and our ultimate conclusion is that substantially all of the cows which went on plaintiff's property and caused the damage were owned by defendant. The evidence shows that cattle owned by defendant and others customarily roamed on property which was located south of plaintiff's corn field and south of defendant's soybean and potato fields, and that they usually were prevented from getting to those cultivated acres by fences which were maintained by plaintiff and by defendant. The evidence does not show how the cattle got into plaintiff's corn crop on this occasion although there is some substantial testimony to the effect that they went through an open gate in defendant's lateral fence into his soybean field, and then they moved eastward to the corn field.
The State of Louisiana has enacted no statute forbidding the owners of animals from allowing their stock to roam at large. And, no parish ordinance prohibiting owners from allowing their stock to roam generally at large or requiring them to fence in their cattle was in effect in that area at the time plaintiff's crop allegedly was damaged. An ordinance had been adopted by the Police Jury of Evangeline Parish in 1965 prohibiting cattle from roaming on certain state highways, including the black-topped highway which bordered both of these tracts on the north. The evidence in the instant suit shows, however, that the cattle which invaded plaintiff's land did not enter it from the highway, and that ordinance thus is not applicable to this case.
Since no statute or local ordinance prohibiting the roaming of cattle at large was in effect at that time, the rights of the parties here are governed by the applicable articles of the Louisiana Civil Code.
LSA-C.C. Art. 2321 provides that "The owner of an animal is answerable for the damage he has caused." Although the language used in this article indicates that a form of absolute liability is imposed on the owner of an animal which causes damage, the courts of this state have consistently held that the owner is liable for damages done by the animal only in cases where he was guilty of some fault or negligence in his ownership or possession of the animal. A showing that the animal has caused damage justifies a presumption that the owner was negligent. This presumption of fault is rebuttable, however, the burden of proof being on the owner to show that he was without the slightest fault and that he did all that was reasonably possible to prevent the injury. Raziano v. T. J. James & Co., 57 So.2d 251 (La.App.Orl.1952); Harris v. Roy, 108 So.2d 7 (La.App. 2 Cir. 1958); Cristina v. Sievers, 15 La.App. 579, 132 So. 375 (1931); Liner v. McEnery, 176 So. 2d 786 (La.App. 2 Cir. 1965); Kennedy v. Frierson, 142 So.2d 838 (La.App. 2 Cir. 1962); Jamison v. Williamson, 174 So.2d 285 (La.App. 2 Cir. 1965); Cabaness v. *498 Mascarella, 203 So.2d 912 (La.App. 1 Cir. 1967); Tripani v. Meraux, 184 La. 66, 165 So. 453 (1936).
The applicable rule of law is correctly stated in Liner v. McEnery, supra, as follows:
"Based upon this statutory rule, the principle is well established in the jurisprudence of this State that the owner of an animal is responsible for damage which it causes if there is any proof of negligence, however slight, on the owner's part. Moreover, where an animal has been a cause of damage, the burden rests upon the owner to exculpate himself of even the slightest degree of negligence."
Our courts also have held that in "open range" areas, that is in areas where there is no stock law or ordinance prohibiting an owner from allowing his animals to roam at large, the owner is under no duty to keep his domestic animals enclosed. In the absence of such a statute or ordinance, the running of livestock at large is lawful, and should a property owner desire to keep such roaming stock off his property it is his duty to enclose it. Parrott v. Babb, 15 La.App. 520, 132 So. 377 (La.App. 2 Cir. 1931); Morgan v. Patin, 47 So.2d 91 (La.App. 1 Cir. 1950); Williams v. Windham, 3 La.App. 127 (2 Cir. 1925).
In Parrott v. Babb, supra, for instance, plaintiff sued for damages to her crops, which damages allegedly were caused by defendant's cattle. There was no stock law or stock control ordinance in effect in that area. The court rejected her demand for damages because of her contributory negligence in failing to maintain a fence around her crop adequate to "keep out the ordinary run of cattle." The court said:
"It was incumbent upon plaintiff to show that her place was within the `no fence law' district or to show that her place was inclosed with a fence that would keep out the ordinary run of cattle. She has failed in both instances."
A similar issue was presented in Morgan v. Patin, supra. There defendant's reconventional demand for damages to his flowers and shrubbery, caused by plaintiff's mule, was rejected because of defendant's contributory negligence in failing to properly fence in his lawn. In that case, as in the instant suit, there was no stock law in effect at the place where the damage occurred. In rejecting defendant's reconventional demand for damages, the court said:
"It is undisputed that the defendant's premises are located outside the city limits of Hammond where there is no stock law and, therefore, the running of livestock at large is lawful, and should a property owner desire to keep such roaming stock off of his property it is his duty to effectively enclose it. * *
"In the present case it is shown that the defendant's property was enclosed by a three board fence except for openings, and in the front was a gate not described by the testimony, and at the main drive is what is known as a cattle guard * *.
"From the pictures and the evidence we do not believe that the cattle guard was so constructed as to keep out any ordinary animal. * * *
"Therefore, the defendant, whose property was located in `open range' territory, has failed to prove that same was enclosed so as to keep out the ordinary run of live stock."
The evidence in Williams v. Windham, supra, failed to show whether there was in effect an ordinance prohibiting the owners from allowing their cattle to roam at large, and the case thus was remanded to the district court to enable plaintiff to show that such an ordinance was in existence. In remanding the case, the court recognized that plaintiff could not *499 recover for damages to his crops, caused by defendant's cattle, unless he established that an ordinance existed prohibiting the roaming of cattle at large.
We find it difficult to reconcile the cases just discussed with the holding in Harris v. Roy, supra. We note, however, that neither Parrott v. Babb nor Morgan v. Patin, supra, were cited in the Harris' case, and we assume that the issue which concerns us here was not presented to the court in that case. See Note, 19 L.L.R. 733, at 737; and Note, 5 L.L.R. 316. In any event, we think the rule applied in Parrott v. Babb and in Morgan v. Patin, supra, is more consistent with the other jurisprudence of this state relating to the liability of an owner for the damages caused by his domestic animals.
In the instant suit, there was no statute or ordinance in effect prohibiting the roaming of cattle at large at the place where plaintiff's corn crop was planted. The evidence shows that plaintiff did not enclose his corn crop by a fence which was adequate to keep out the ordinary run of cattle. He was fully aware of the fact that there was no fence on the west side of his corn field, that it was the custom for farmers to allow cattle to graze on farm lands after the crops were harvested, and that the crops on defendant's land had been harvested. Defendant was under no duty to keep his cattle enclosed, and thus he had the right to allow them to roam at large.
Our conclusion is that plaintiff is barred from recovering damages by his own contributory negligence in failing to enclose his corn crop with fences adequate to keep out the ordinary run of cattle. Having concluded that plaintiff is barred from recovery by contributory negligence, it is unnecessary for us to consider or determine whether defendant was negligent in allowing his cattle to roam onto plaintiff's land.
Finally, plaintiff contends that the trial court erred in ordering him to "open up the gate which he has padlocked" and to "enclose his tract of land by constructing a fence sufficient to keep cattle from roaming."
In the petition filed by plaintiff he demands only a money judgment against defendant. Defendant has answered denying most of the allegations in the petition and praying that plaintiff's suit be dismissed. He, however, has filed no reconventional demand or other pleading demanding any relief other than that plaintiff's suit be dismissed. We find nothing in the record which indicates that the pleadings have been enlarged to the extent that defendant should be granted this type of relief. We conclude, therefore, that the trial court erred in ordering plaintiff to open up the gate or to construct a fence on his property.
For these reasons, we hereby affirm that part of the judgment appealed from which rejects plaintiff's claim for damages and condemns plaintiff to pay all costs of this suit. We reverse that part of the judgment appealed from which orders plaintiff to open up the gate which he has padlocked, and that part which orders plaintiff to enclose his tract of land by constructing a fence sufficient to keep cattle from roaming. One-half the costs of this appeal are assessed to plaintiff-appellant and the remaining one-half of such costs are assessed to defendant-appellee.
Affirmed in part and reversed in part.