377 So.2d 1286 (1979)
J. B. LaHAYE FARMS, INC., et al., Plaintiffs-Appellees,
v.
LOUISIANA DEPARTMENT OF HIGHWAYS et al., Defendant-Appellant.
No. 7218.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1979.
Rehearing Denied January 15, 1980.
William J. Doran, Jr., Baton Rouge, for defendants-appellants.
J. Jake Fontenot, Mamou, for plaintiffs-appellees.
Before CUTRER, STOKER and DOUCET, JJ.
STOKER, Judge.
This is a suit for damages to crops resulting from the flooding of fields belonging to plaintiff, J. B. LaHaye Farms, Inc. Also a plaintiff is Charles LaHaye, who farms this property as lessee and divides the crops with LaHaye Farms. Plaintiffs contend that the cause of the flooding was the negligence of the defendant, Louisiana Department *1287 of Highways (now Louisiana Department of Transportation and Development, hereinafter Department). It is alleged that the Department altered the drainage of the plaintiffs' farm so that rising waters from ordinary and usual rainfall flooded some of the plaintiffs' fields. From an adverse judgment on the merits, defendant appeals.
U.S. Highway 167 runs north-south through the LaHaye farm for a distance of approximately 4,000 feet. In 1963 or early 1964 certain improvements were made in the highway adjacent to the farm. Along with these improvements certain other changes were made which plaintiffs claim had a drastic effect on the drainage of the farm. Five "equalizers" or cross drains were placed under the highway adjacent to the LaHaye Farm to drain water from the west to the east side of the highway. The Department also blocked the ditch between the highway and the farm; a "ditchblock" was built at the south corner of the LaHaye property, next to the highway, which forced water that would naturally drain south to go east through a ditch running eastward along the southern boundary of the farm.
Plaintiffs had other complaints about the Department's actions in regard to the drainage ditch. Besides blocking it up completely, there were three driveways across the ditch. The Department was required to provide side drains or culverts through the driveways to prevent them from blocking the ditch. There was conflicting testimony on the effect of these culverts, but there was significant evidence submitted that they were too high in relation to the surrounding terrain and too small to adequately serve their purpose.
Plaintiffs stressed as one of their major arguments the Department's failure, since the improvement of the highway in 1963 or 1964, to keep the drainage ditch on the east side of the highway clear and free of overgrowth and siltation.
Defendant Department's witness testified there was no evidence of siltation in the drainage ditch. He said that it was approximately the same as it was when it was constructed. This is just one example of the great amount of conflicting testimony in this case, especially among the various experts, and often on very technical concepts of drainage.
Plaintiff suggests much of the problem could be alleviated if the ditch were made deeper and wider, but defendant feels this could destroy the integrity of the highway and endanger the lives of motorists. Plaintiffs counter that defendant was negligent in not acquiring larger rights-of-way for bigger drainage ditches.
Defendant makes much of the fact that although the highway improvements which caused this flooding were made in 1963 or 1964, the first complaint to any state agency did not take place until 1973, and damages were not claimed for any year until 1974. Plaintiffs in their brief counters that 1974 was the first year they suffered injury because of the waters.
The year 1974, as well as being the first year the flooding caused any damage, was also the first year Charles LaHaye planted soybeans. Defendant seems to attach great significance to the following chain of events: the highway was improved in 1963 or 1964; plaintiffs did not complain of flooding until the summer of 1973; they first sought Department help in early 1974; plaintiffs first planted soybeans in the Fall of 1974, then claimed damages for that crop of 1974. Plaintiffs knew of the problem before planting the less water tolerant crop of soybeans.
There is no question that the LaHaye farm is in a low, wet area. In fact, the evidence is clear that at one time drainage was intentionally blocked, and dams were built in order to make the area in question a lake. Nevertheless, the evidence is sufficient to support the trial court's finding in favor of plaintiffs. Almost every witness who testified possessed expertise in some field pertinent to the issues. For example the lessee-farmer held a degree in Animal Husbandry and was clearly an experienced farmer. It is obvious from the testimony that experts from different agencies of government were ranged against one another. Their points of view were influenced by what they considered to be the prime or overriding considerations. For example *1288 plaintiffs' experts, with backgrounds in the Soil Conservation Service and the Louisiana Department of Public Works (as it was formerly known), testified that the drainage design was improper and inadequate from the standpoint of its effect on land use. The Department officials and its experts testified that the drainage design was adequate. Further, the Department took the position as pointed out above, that insufficient right-of-way existed to put in effect new drainage plans as urged by plaintiffs.
The trial court did not elaborate on its findings in reasons for judgment but confined itself to holding that: "The court is satisfied that plaintiffs are entitled to damages from defendant under Articles 660 and 667 of the Louisiana Civil Code". The effect of this holding is that the Department's improvement of the highway in 1963 and 1964 did cause the flooding problems experienced by plaintiffs. After carefully considering all the testimony, particularly that of the experts, we cannot say that the trial court was clearly wrong in the finding. Therefore, this finding will not be disturbed. Canter v. Koehring Co., 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We see no need to review the testimony of each witness nor to attempt to state the conclusions of each. The testimony on both sides deals with technicalities involving cause and effect relative to drainage and waterflow. Much of it includes a given witness' prescription for what should be done; in the case of the Department witnesses, nothing should be done.
Our function and that of the trial court is simply to determine if plaintiffs have been damaged and whether or not the drainage was caused by the highway improvement and the Department's drainage installations and drainage arrangements including ditches. Deciding upon what particular corrective measures, if any, are to be adopted is not a matter to be laid down in this opinion. Having affirmed the trial court's finding of facts, we observe that the law governing the case is reasonably simple and quite clear. We stated the law as follows in Hortman v. Department of Highways, 265 So.2d 812 (La.App.3rd Cir.1972):
In the construction and maintenance of its highways, the Department of Highways has the duty to provide bridges, culverts or other works sufficient for natural or other existing drainage systems, and the department is liable for any damages caused by the blocking of such drainage. Grounds v. Louisiana Highway Commission, 180 La. 670, 157 So. 385; Schwartzenburg v. Louisiana Highway Commission, 184 La. 989, 168 So. 125; Connolly v. Louisiana Highway Commission, 177 La. 78, 147 So. 505. However, it is incumbent on the plaintiff to establish clearly that the damages were caused by the department's failure to install adequate drainage structures along the highway, Holley v. State, 128 So.2d 908 (La. App.2d Cir.1961) and Baird v. T. L. James & Company, 240 So.2d 428 (La.App.2d Cir.1970).
QUANTUM
The trial court made awards for actual crop losses as follows: 1974 (beans), $17,112.00; 1975 (rice) $18,687.50; and 1976 (milo) $13,713.75. The total actual loss was $49,513.25. The trial court declined to make an award for general damages for mental anguish. The defendant does not appear to dispute the basic computations of these figures or the facts upon which they are based.
Apparently defendant would have us deny plaintiffs any damages, or at least award only the cost of replanting, because, as the Department alleges in its brief, the plaintiffs did not establish certain costs. Defendant's complaint is set forth in its brief as follows:
The figures submitted by the plaintiff and substantially adopted by the trial court are based upon gross revenues that the plaintiff would have received. (Assuming, for the purposes of argument that the figures are correct. [sic]) This is not the proper measure of damages in a situation like that before the court. When the crop destroyed is not a mature crop the measure of damages should be the average yield LESS the cost of maturing, *1289 marketing, and harvesting the crops. Where the plaintiff does not establish these costs, this rule cannot be applied and it would be proper to award plaintiff his proven expenses only. (See Trahan v. Florida Gas Transmission Company, 208 So.2d 550 (La.App. 3 Cir.1968); Bryant v. McCann, 297 So.2d 262 (La. App. 3 Cir.1974).)
We feel that defendant is mistaken in the effect to be given to the pronouncements in these two cases. Neither case denied the claimants any recovery at all. In the Trahan case, the Court of Appeal approved a trial court's estimation of profit where there was an absence of proof of cost of marketing, harvesting and maturing a crop. In the Bryant case we said:
Generally, the amount of damage which should be awarded for the loss of a growing crop is the average yield and market value of crops of the same kind, planted and cared for in the same manner and in the same area, less the cost of marketing, harvesting and maturing the crop. The market value of such a crop is the price which the crop would have brought in a matured state at a sale in that community. Trahan v. Florida Gas Transmission Co., 208 So.2d 550 (La.App.3 Cir.1968), and cases cited therein.
* * * * * *
In the instant suit the trial judge found, correctly we think, that plaintiff had already expended the cost of planting and cultivating his crops, and that since they were ready to be harvested when damaged, plaintiff was entitled to recover the amount which he would have received for them had the damage not been sustained. Plaintiff harvested the crops which remained after the damage, so he incurred the same expense of harvesting which would have been incurred had the crops not been damaged.
In the proof of special damages relating to earnings the Louisiana Supreme Court has held that a plaintiff does not suffer the penalty of denial of damages for failure to prove damages with exactitude. In Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971) it was held as follows: Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess damages based upon all the facts and circumstances of the case. The Jordan case makes it clear that, in the matters of this nature, defendant bears some responsibility. If a defendant wishes to protect itself, where gross as opposed to net income is concerned, defendant must go forward with evidence or inquiry to establish costs. Moreover, as in the Bryant case, we believe the costs of harvesting and maturing the crops on 115 acres was substantially incurred.
For the foregoing reasons we are not of the opinion that plaintiffs should be denied special damages entirely. Likewise, we are not inclined to change the award made by the trial court.
The trial court denied general damages to plaintiff for mental anguish on the ground that the court "was of the opinion that plaintiffs have been adequately compensated." Clearly, under circumstances such as presented in this case, plaintiffs are entitled to damages for inconvenience, mental anguish and worry occasioned by injury to their property. Jardell v. Sabine Irrigation Co., Inc., 346 So.2d 1365 (La.App.3rd Cir.1977). The record reflects without question that Charles LaHaye experienced such injuries. We feel that he should be compensated for this in the amount of $3,000.
For the foregoing reasons, the judgment of the trial court is amended to award general damages in favor of plaintiff, Charles LaHaye, and against defendant, Louisiana Department of Highways, or its successor, in the sum of $3,000, together with legal interest from date of judicial demand until paid and for all costs of these proceedings, such award for general damages to be in addition to the award for special damages, that is, in addition to the interest therein of plaintiff, Charles LaHaye. In all other respects the judgment of the trial judge is affirmed.
AMENDED AND AFFIRMED AS AMENDED.