485 So.2d 142 (1986)
Mary Ann Farris LIGON and Theodore N. Farris, Jr., Appellees,
v.
Evlyn Farris ANGUS and Ronald G. Angus, Appellants.
No. 17569-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
Rehearing Denied March 27, 1986.
*143 T.K. Giddens, Jr. by Jeanette G. Garrett, Shreveport, for appellees.
Hunter & Jack by W. Orie Hunter, III, Shreveport, for appellants.
Before MARVIN, SEXTON and NORRIS, JJ.
NORRIS, Judge.
This is a suit to partition some succession property. The trial court overruled an exception of improper venue and ordered partition by licitation as requested by the plaintiffs. The defendant appeals and we affirm.
The decedent died testate in 1981 in East Baton Rouge Parish, where she owned a large house and many valuable movables, chiefly antiques and fine furniture. She had three children who are the parties to the suit. The plaintiffs are Mrs. Ligon[1] and Dr. Farris. Both of them live out of state. The defendant is their sister, the other daughter, Mrs. Angus. Her husband, Mr. Angus, was the succession representative and was originally a defendant but was dismissed early in the proceedings. By a "partial judgment of possession," dated March 2, 1983, the three children were sent into possession of the decedent's property.
In February 1982 the parties and Mr. Angus all went down to Baton Rouge to make a master list of the house's contents. Dr. Farris was not interested in taking any of the movables, but the sisters claimed a large portion of the lot. They put their initials next to each item they wanted on the master list. They left about sixty items unclaimed, items whose value they could not ascertain; they decided to await an appraisal so they could divide them equally. Mrs. Ligon and Mrs. Angus carried off their new belongings shortly and left the unclaimed ones in the house. In addition, there were three special items, two chandeliers and a mirror, that they thought would make the house more attractive to purchasers and, according to Mrs. Ligon, were agreed to be sold as fixtures with the house.
In June 1983, the real estate agents found a prospective buyer; they sent an appraiser to the house. Mrs. Ligon then learned that Mrs. Angus had returned to Baton Rouge and removed all the remaining items from the house, including the chandeliers and mirror. She would not tell Mrs. Ligon where they were, but she had hidden them in her son-in-law's garage in Shreveport. She kept the two chandeliers at her own home in Bossier City. When Mrs. Angus refused to return the items, Mrs. Ligon and Dr. Farris sued.
The defendants filed several exceptions. As mentioned earlier, a no cause against the executor, Mr. Angus, was sustained, and this part of the case is not before us. There was also a declinatory exception of improper venue. This was denied and forms the subject of the first assignment of error. On the merits, the trial court ordered partition by licitation. The content of the list for partition forms the basis of the second and third assignments of error.

ASSIGNMENT NO. 1
Mrs. Angus claims that venue was not proper in Bossier Parish. She argues that the succession had not been closed so the court in East Baton Rouge Parish retained jurisdiction. LSA-C.C.P. art. 81(2). We agree that the succession in East Baton Rouge had not been completely closed because it had resulted in only a "partial" judgment of possession.
The appellees, however, urge us to read the language of the judgment itself. It provides:

*144 IT IS ORDERED, ADJUDGED AND DECREED that Evlyn Farris Angus, Theodore N. Farris and Mary Ann Farris Ligon be recognized as the residuary legatees of the deceased, and, as such, the owners, and are sent into possession of all of the property belonging to the succession of the deceased, except for the cash held in reserve in the sum of $5,000.00 as stated below, and without in any way limiting the generality of this judgment Evlyn Farris Angus, Theodore N. Farris and Mary Ann Farris Ligon are specifically sent into possession as sole owners of the following described property: [the house and lot in Baton Rouge] (emphasis supplied)
This passage makes it completely clear that the judgment was partial only because it left $5,000 in reserve for contingencies. With respect to everything else, including the movables at issue, the heirs have indeed been placed in possession by judgment. The instant suit, therefore, is not one to partition a succession. It is an action to partition property owned in indivision. The codal articles pertaining to partitions, and not to successions, apply. LSA-C.C.P. art. 81, Official Revision Comment (d); Fabacher v. Fabacher, 214 La. 940, 39 So.2d 426 (1949); Medicis v. Medicis, 155 La. 171, 99 So. 27 (1924); Gates, Partition of Land and Mineral Rights, 43 La.L.Rev. 1119, 1121 (1983).
The proper venue for partition between co-owners is "in the parish where some of the property is situated, if it consists only of movables." LSA-C.C.P. art. 4603. Mrs. Angus herself testified that part of the property was situated at her home in Bossier Parish. R.p. 102. Thus the venue was proper and the trial court correctly overruled the exception.

ASSIGNMENT NO. 2
Here Mrs. Angus contends that the trial court should have added to the list for partition certain other property that was in Mrs. Ligon's possession. Despite several careful readings of her brief, we have not been able to determine which items Mrs. Angus is referring to. In light of this ambiguity, we have considered two possible kinds of property that Mrs. Angus wanted to draw into the proceedings.
First, she may mean the property in Mrs. Ligon's possession as a result of the informal, non-judicial partition of February 1982. These items, however, had already been partitioned by a valid, voluntary partition. See LSA-C.C. art. 1294. From the evidence, this partition appears to have been final with respect to the items that were initialed on the master list. Mrs. Angus cannot void this agreement, therefore, without proving a vice of consent, failure of cause, or lesion. LSA-C.C. arts. 1948, 1966, 1398. She has proved none of these and we uphold the trial court's refusal to re-partition this property.
Second, she may be referring to certain items that the testator manually donated to Mrs. Ligon before she died.[2] There is, however, absolutely nothing in the record about how the testator disposed of any property before death. With this total lack of proof, the trial court was correct not to consider any other property. Besides, even if Mrs. Angus had proved the alleged inter vivos gifts, her remedy would be to demand collation. LSA-C.C. art. 1228. She did not. The trial court's judgment was correctly limited to the relief requested in the pleadings, a partition. See Kean v. Lemaire, 451 So.2d 151 (La. App.1st Cir.1984); Fall v. Manuel, 228 So.2d 494 (La.App.3d Cir.1969).
This assignment is without merit.

ASSIGNMENT NO. 3
Here Mrs. Angus contests the trial court's inclusion of the chandeliers and mirror in the list for partition. She seems to claim that Mrs. Ligon gave up her rights to these items through the following circumstances. *145 When they made the master list, the sisters agreed to let the chandeliers and mirror remain with the house. This was a reasonable attempt to enhance the house's value. The three children executed in triplicate an agreement to purchase. This instrument stated nothing about the chandelier and mirror. Three days later, Mrs. Angus presented an "addendum" to the prospective purchaser. This addendum, signed only by Mrs. Angus, contained a stipulation that the seller would retain the chandeliers and mirror; in fact, these items would be out of the house when the purchasers moved in. The appellees, Mrs. Ligon and Dr. Farris, were not parties to the addendum. Only Mrs. Angus and the purchasers were actually aware of it. Mrs. Ligon was advised of it by the realtors later. R.p. 63.
Mrs. Angus argues that under any theory of contract interpretation, Mrs. Ligon agreed to alienate her interest in these items. She intended to sell her share of the chandeliers and mirror, and subsequently passed an act of sale, so she has effectively divested herself of her interest, or so Mrs. Angus argues.
The original agreement to purchase was a binding promise to sell. LSA-C.C. art. 2462. Mrs. Ligon's intention, under this contract, was to sell the movables to the purchaser. When the purchasers subsequently agreed not to buy the movables, Mrs. Ligon did not give up her share in them. They still belonged to her because the purchasers did not take them.
This situation is governed by LSA-C.C. art. 2295. Without Mrs. Ligon's permission or knowledge, Mrs. Angus removed the items from the house and arranged it that the purchasers would not buy them. The things still belonged to all three, Mrs. Angus, Mrs. Ligon and Dr. Farris. This is an assumption of the management of the affairs of another by keeping possession of property for her. The "manager" cannot take the owner's things for herself. LSA-C.C. art. 2298. She holds them for the owner. LSA-C.C. art. 3427. Since the items were still owned in indivision, it was entirely proper for the trial court to subject them to partition by licitation.
Accordingly, the judgment is affirmed at Mrs. Angus's costs.
AFFIRMED.
NOTES
[1] The plaintiff's name in the caption of the suit is spelled "Lignon," but all subsequent pleadings list her as "Ligon," which is her correct name and the one we will use.
[2] This was the interpretation offered by Mrs. Ligon's attorney at oral argument; Mrs. Angus's counsel did not appear and clarify the brief.